Case No. 21-3171

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

**DOUGLAS WINTER**,
*Plaintiff-Appellant*

v.

**PATRICK MANSFIELD**, *et al.*
*Defendants-Appellees*

**BRIEF OF DEFENDANTS-APPELLEES
PATRICK MANSFIELD**, *et al.*

Appeal from the United States District Court for the District of Kansas
Case No. 19-CV-3236-HLT-TJJ
Honorable Holly L. Teeter, United States District Judge

OFFICE OF KANSAS ATTORNEY
GENERAL DEREK SCHMIDT
Michael J. Duenes, Assistant A.G.
120 SW 10th Ave, 2d Floor
Topeka, Kansas 66612
(785) 296-2215
michael.duenes@ag.ks.gov

**ORAL ARGUMENT IS NOT REQUESTED**

# TABLE OF CONTENTS

TABLE OF AUTHORITES .................................................................. iii

PRIOR RELATED APPEALS ............................................................ vi

GLOSSARY .................................................................................... vii

JURISDICTIONAL STATEMENT ...................................................... 1

STATEMENT OF THE ISSUES .......................................................... 1

    I.    The district court properly granted summary judgment to Defendants based on qualified immunity. ................................................................. 1

    II.   The district court rightly declined to invoke supplemental jurisdiction over Winter's unspecified state law claims. ........................................................ 1

STATEMENT OF THE CASE .............................................................. 1

SUMMARY OF ARGUMENT .............................................................. 6

ARGUMENT ...................................................................................... 7

    I.    The district court properly granted summary judgment to Defendants based on qualified immunity. ................................................................. 7

Standard of Review .......................................................................... 7

Discussion ...................................................................................... 9

    A.    *Winter has waived his arguments on appeal because he has not supported them with citations to the record.* .......................................................... 9

    B.    *The district court correctly deemed Defendants' facts admitted.* ........................................................... 11

   **C.**    *Defendants are entitled to qualified immunity*............**18**

*Qualified Immunity Standard* .................................................**19**

*Excessive Force Standard* .....................................................**20**

    **i.**    *Officer Corby's actions during the second medical*
        *clinic evaluation.* .................................................**22**
    **ii.**   *Use of force in B cell 131* ...................................**24**
    **iii.**  *Officer Dunn's use of handcuffs*.........................**32**
    **iv.**  *Summary judgment was appropriate on Winter's claim*
        *that Mansfield and Leon failed to intervene.*...............**37**

  **II.**   **The district court rightly declined to invoke**
      **supplemental jurisdiction over Winter's unspecified**
      **state law claims.**.................................................**40**

**Standard of Review** ...........................................................**40**

   *Winter has waived this issue on appeal, and in any case, the*
   *district court did not abuse its discretion.*of Review ...........**40**

**CONCLUSION**.................................................................**41**

**CERTIFICATE OF COMPLIANCE**....................................**41**

**CERTIFICATE OF DIGITAL SUBMISSION** ....................**42**

**CERTIFICATE OF SERVICE** ...........................................**42**

**ATTACHMENTS** .............................................................**43**

**10th Cir. R. 28.2(B) ATTACHMENTS**..............................**43**

**Fed. R. App. P. Rule 28(f) ATTACHMENTS**.....................**43**

# TABLE OF AUTHORITIES

Cases
      Page(s)

*Adler v. Wal-Mart Stores, Inc.*,
  144 F.3d 664 (10th Cir. 1998) ...............................................................8

*Barnes v. United States*,
  173 Fed. Appx. 695 (10th Cir. 2006) .....................................................13

*Beaulieu v. Ludeman*,
  690 F.3d 1017 (8th Cir. 2012) ..............................................................35

*Colbruno v. Kessler*,
  928 F.3d 1155 (10th Cir. 2019) .......................................................20, 24

*Cortez v. McCauley*,
  478 F.3d 1108 (10th Cir. 2007) .......................................................34, 36

*Folts v. Grady Cty. Bd. of Cty. Commissioners*,
  2017 WL 11557929 (W.D. Okla. 2017) .................................................36

*Garrett v. Selby Connor Maddux & Janer*,
  425 F.3d 836 (10th Cir. 2005) ......................................... 9, 11, 13, 39, 40

*Gutteridge v. Oklahoma*,
  878 F.3d 1233 (10th Cir. 2018) ................................................ 19, 20, 31

*Hall v. Bellmon*,
  935 F.2d 1106 (10th Cir. 1991) ............................................... 8, 9, 15, 35

*Hannula v. City of Lakewood*,
  907 F.2d 129 (10th Cir. 1990) ..............................................................33

*Hastings v. Campbell*,
  47 Fed. Appx. 559 (10th Cir. 2002) ......................................................9

*Hickey v. Brennan*,
　969 F.3d 1113 (10th Cir. 2020) ...............................................................7

*Hudson v. McMillian*,
　503 U.S. 1 (1992) ..................................................... 20, 21, 23, 31, 32, 34

*Janny v. Gamez*,
　8 F.4th 883 (10th Cir. 2021) .......................................................8, 9, 29

*Kisela v. Hughes*,
　138 S. Ct. 1148 (2018) ...........................................................................19

*Lehman v. McKinnon*,
　2021 WL 4129229 (10th Cir. 2021) .....................................................20

*Marshall v. Milyard*,
　415 Fed. Appx. 850 (10th Cir. 2011) ...............................................20, 21

*May v. Segovia*,
　929 F.3d 1223 (10th Cir. 2019) ..............................................................8

*McCoy v. Meyers*,
　887 F.3d 1034 (10th Cir. 2018) ..........................................................8, 9

*Mullenix v. Luna*,
　577 U.S. 7 (2015) ...................................................................................19

*Northington v. Jackson*,
　973 F.2d 1518 (10th Cir. 1992) ..............................................................21

*Norton v. The City of Marietta*,
　432 F.3d 1145 (10th Cir. 2005) ..............................................................23

*Palmer v Philpot*,
　291 Fed. Appx. 206 (10th Cir. 2008) ...............................................10, 11

*Piedra v. True*,
　169 F. Supp. 2d 1239 (D. Kan. 2001) ....................................................32

*Redmond v. Crowther*,
  882 F.3d 927 (10th Cir. 2018) ............................................................. 20

*Requena v. Roberts*,
  893 F.3d 1195 (10th Cir. 2018) ........................................................... 10

*Reyes v. Chinnici*,
  54 Fed. Appx. 44 (3d Cir. 2002) .......................................................... 30

*Rowell v. Bd. of Cty. Commissioners of Muskogee Cty.*,
  978 F.3d 1165 (10th Cir. 2020) ........................................................... 39

*Sampley v. Ruettgers*,
  704 F.2d 491 (10th Cir. 1983) ............................................................. 22

*Schaffer v. Salt Lake City Corp.*,
  814 F.3d 1151 (10th Cir. 2016) .............................................................. 8

*Scott v. Harris*,
  550 U.S. 372 (2007) ..................................................... 8, 9, 15, 23, 29

*Stevenson v. Cordova*,
  733 Fed. Appx. 939 (10th Cir. 2018) ............................................... 33, 36

*Strain v. Regalado*,
  977 F.3d 984 (10th Cir. 2020) ............................................................. 40

*Thomas v. Durastanti*,
  607 F.3d 655 (10th Cir. 2010) ............................................................... 9

*Trecker v. Kalinch*,
  2019 WL 4781858 (E.D. Okla. Sept. 30, 2019) ..................................... 30

*United States v. Rodriguez-Aguirre*,
  108 F.3d 1228 (10th Cir. 1997) ........................................................... 11

*Vondrak v. City of Las Cruces*,
   535 F.3d 1198 (10th Cir. 2008) ............................................................. 34

*Whitley v. Albers*,
   475 U.S. 312 (1986) ..................................................................... 21, 24

*Wilkins v. Gaddy*,
   559 U.S. 34 (2010) ........................................................................... 21

*Williams v. City of Montgomery*,
   839 Fed. Appx. 356 (11th Cir. 2020) ..................................................... 23

Statutes

28 U.S.C. § 1291 ................................................................................... 1
42 U.S.C. § 1983 ............................................................................... 1, 5

Rules

10th Cir. R. 28 ........................................................................... 10, 11, 43
10th Cir. R. 32 ..................................................................................... 41
Fed. R. App. P. 28 ..................................................................... 10, 43
Fed. R. App. P. 32 ..................................................................... 41, 43
Fed. R. Civ. P. 56 ..................................................................... 8, 11, 43

Other Authorities

D. Kan. Rule 56.1(a) ............................................................. 11, 12, 13, 43

## PRIOR OR RELATED APPEALS

None

# GLOSSARY

EDCF:        El Dorado Correctional Facility

HCF:         Hutchinson Correctional Facility

KDOC:        Kansas Department of Corrections

SST:         Special Security Team

## JURISDICTIONAL STATEMENT

The United States District Court for the District of Kansas had jurisdiction over this case because Douglas Winter asserted claims under 42 U.S.C. § 1983. This appeal arises from the district court's August 27, 2021 Order, granting Defendants' motion to dismiss, or in the alternative, for summary judgment. Winter submitted a timely notice of appeal on September 22, 2021. Under 28 U.S.C. § 1291, this Court has jurisdiction to hear Winter's appeal, which comes from a final judgment disposing of all his claims.

## STATEMENT OF THE ISSUES

**I.     The district court properly granted summary judgment to Defendants based on qualified immunity.**

**II.    The district court rightly declined to invoke supplemental jurisdiction over Winter's unspecified state law claims.**

## STATEMENT OF THE CASE

Plaintiff-Appellant, Douglas Winter, was incarcerated at El Dorado Correctional Facility (EDCF) on October 26, 2018, when the events in question occurred. (ROA, Vol. I at 15, 19; Vol. II at 1178). Winter's "paranoia got the best of him" that day, and he "had mentally checked out," so he stabbed his cellmate and two Kansas Department of

1

Corrections (KDOC) officers. (ROA, Vol. I at 19-20, 37-38; Video D2 cell house 7 at 12:58:56-12:59:10).[1] Winter confessed to being high on methamphetamine and did not remember everything that happened. (ROA, Vol. I at 73, 75, 157 [Carmen Baynham Aff. at ¶ 12], 232, 285-86).

After stabbing the two officers and being pepper-sprayed, Winter was restrained and taken to the medical clinic for assessment and decontamination. (ROA, Vol. I at 60, 299 [Jordan Gladfelter Decl. at ¶ 4]; Video D2 cell house 8 at 12:59:00-12:59:40). The Special Security Team (SST) officers who escorted Winter to the medical clinic used an "alternate escort position," lifting Winter's handcuffed arms over his head with his head slightly down. (ROA, Vol. I at 299-300 [Gladfelter Decl. at ¶¶ 3-5]; Vol. II at 394; Video H4 at 13:07:51-13:08:05).

After Winter's medical assessment, Officer Gladfelter and two other officers escorted him to the decontamination shower using the standard escort technique. (ROA, Vol. I at 300 [Gladfelter Decl. at ¶ 6]; Video H3 at 13:12:10-13:12:55; Video H6 at 13:13:18-13:13:28). As Winter left the

---

[1] The videos from the October 26, 2018 events were included in the *Martinez* Report as Exhibit H; ROA, Vol. IV, and a copy was received by this Court on November 3, 2021. Defendants cite the video as "Video [title] at [Hour:Minute:Second-Hour:Minute:Second]," as displayed on the timer of the camera.

shower, he intentionally walked toward Gladfelter, so Gladfelter and the other officer put him into a modified alternate escort position, holding his hands high over his head. (ROA, Vol. I at 300 [Gladfelter Decl. at ¶ 9]; Video H6 at 13:14:09-13:14:20).

While Winter was being escorted through the pill line area of the medical clinic by Officers Gladfelter and Richard Hamilton, he was taken to the ground by Hamilton[2] and suffered a cut to his eyebrow and forehead. (ROA, Vol. I at 155 [Baynham Aff. at ¶ 8], 180, 301 [Gladfelter Decl. at ¶ 11]; Video H8 at 13:15:20-13:15:30). Several other officers arrived to help physically secure Winter on the floor. (Video H8 at 13:16:17-13:16:43). Prison medical staff tried to assess him there, but he was uncooperative, so they were unable to treat him. (ROA, Vol. I at 155 [Baynham Aff. at ¶ 8, 304 [Brett Corby Decl. at ¶¶ 4-5; Video H8 at 13:17:40-13:19:50).

Consequently, the officers restrained Winter's feet, covered his face with a spit mask, placed him in a restraint chair, and took him to the clinic for further medical assessment. (ROA, Vol. I at 304-05 [Corby Decl.

---

[2] Officer Hamilton is not a party to this lawsuit. (ROA, Vol. III at 208).

at ¶ 5]; Video H1 at 13:26:25-13:26:33; Video H7 at 13:26:25-13:26:30; Video H8 at 13:19:50-13:26:27). At this point, Winter swallowed some drugs he had in his cheek, leading him to experience further fear, paranoia, and confusion. (ROA, Vol. I at 75).

During this second visit to the medical clinic, Winter continued his resistant behavior by moving his head around, so the staff could not stitch his head wound. (ROA, Vol. I at 155 [Baynham Aff. at ¶ 8, 305 [Corby Decl. at ¶¶ 6-7]). Therefore, SST Officers took Winter to the B cell house in the restraint chair. (ROA, Vol. I at 155 [Baynham Aff. at ¶ 8, 305 [Corby Decl. at ¶ 7]).

Once Winter arrived at the B cell house, he was taken into cell 131, where a release was attempted, and force was used. (ROA, Vol. I at 301-02 [Gladfelter Decl. at ¶¶ 13-24, 305-06 [Corby Decl. at ¶¶ 7-10, 11-13], 307-08 [Stephen Chiles Decl. at ¶¶ 5-12]). Medical staff on the scene were unable to wrap and clean Winter's head wound. (ROA, Vol. I at 302 [Gladfelter Decl. at ¶ 21]). Winter was then removed from the cell in the restraining chair. (ROA, Vol. I at 42, 311 [Austin Dunn Decl. at ¶ 8]).

While handcuffed in the chair, Winter was transported to Hutchinson Correctional Facility (HCF) and released from the chair upon

arrival. (ROA, Vol. I at 25, 156 [Baynham Aff. at ¶ 10]). His head laceration was subsequently repaired at the Hutchinson Regional Medical Center. (ROA, Vol. I at 157 [Baynham Aff. at ¶¶ 12-13]).

On November 19, 2019, Winter filed a § 1983 complaint against corrections officers Patrick Mansfield, Melissa Leon, Brett Corby, Austin Dunn, Jordan Gladfelter, and Stephen Chiles (Defendants), as well as "Defendants, Names Unknown" and Corizon, LLC, for violating his Eighth Amendment rights. (ROA, Vol. I at 15-16, 27-30). Specifically, Winter claimed the officers either subjected him to cruel and unusual punishment or failed to intervene as the actions were occurring. (ROA, Vol. I at 22-23, 28-29). Winter also claimed that Corizon—the corporation providing contract medical services to inmates at certain Kansas institutions—failed to provide him with necessary medical treatment. (ROA, Vol. I at 30, 94, 102).

Corizon asked the district court to dismiss it from this case, which the court granted. (ROA, Vol. I at 109-11). Subsequently, Defendants filed a motion to dismiss, or in the alternative, for summary judgment. (ROA, Vol. I at 118). Winter filed a response and an opposition to

Defendants' facts. (ROA, Vol. II at 1310-19; III at 6-12). Defendants filed a reply to both. (ROA, Vol. III, 27-45).

The district court dismissed Winter's official capacity claims and granted summary judgment for Defendants in their individual capacities based on qualified immunity. (ROA, Vol. III at 197). The court dismissed any claim against Officer Hamilton, without prejudice, because Winter did not amend his complaint to include, nor did he serve, Hamilton. (ROA, Vol. III at 208, n. 5). As for "Defendants, Names Unknown," the court dismissed Winter's claims against them with prejudice. (ROA, Vol. III at 215, no. 9). Finally, the court dismissed Winter's unspecified state law claims without prejudice by declining to exercise supplemental jurisdiction. (ROA, Vol. III at 215, no. 10).

Winter timely appeals. (ROA, Vol. III at 218).

## SUMMARY OF ARGUMENT

Winter has waived his arguments on appeal because he did not controvert Defendants' facts under the federal and local rules. And even when his responses are considered, he has not created any genuine issue of material fact, and thus, Defendants' facts were properly deemed admitted.

Should this Court reach the merits, Defendants are entitled to qualified immunity because they did not use excessive force on Winter. In addition, Winter has not shown that clearly established federal law prohibits the minimal use of force exhibited here in light of his erratic, aggressive, and resistant behavior.

Defendants Mansfield and Leon did not fail to intervene in the officers' use of force because Mansfield was not present for any of it, and there was no use of excessive force that might have required their intervention. Finally, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over Winter's state law claims because those claims were dismissed early in the litigation.

This Court should affirm the district court's grant of summary judgment to Defendants.

## ARGUMENT

### I.    The district court properly granted summary judgment to Defendants based on qualified immunity.

#### *Standard of Review*

This Court reviews a grant of summary judgment de novo, applying the same standard as the district court. *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020). Summary judgment is appropriate when

there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018). This Court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Schaffer v. Salt Lake City Corp*. 814 F.3d 1151, 1155 (10th Cir. 2016). "In qualified immunity cases, this usually means adopting … the plaintiff's version of the facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Facts must be identified by reference to affidavits, deposition transcripts, or incorporated exhibits. *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 671 (10th Cir. 1998). "So long as an affidavit is based upon personal knowledge and sets forth facts that would be admissible in evidence, it is legally competent to oppose summary judgment, irrespective of its self-serving nature." (Internal quotations omitted). *Janny v. Gamez*, 8 F.4th 883, 900 (10th Cir. 2021). However, reliance on mere pleadings or conclusory allegations is not enough. *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Indeed, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no

reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Janny*, 8 F.4th at 901 (quoting *Scott*, 550 U.S. at 380). *See Thomas v. Durastanti*, 607 F.3d 655, 659 (10th Cir. 2010) (when "considering a summary judgment motion based upon qualified immunity," the court does not adopt the plaintiff's factual assertions when there is clear video evidence to the contrary.).

Finally, "while courts must construe pro se pleadings liberally, pro se plaintiffs may not rely on conclusory allegations to overcome their burden." *Hastings v. Campbell*, 47 Fed. Appx. 559, 560 (10th Cir. 2002) (citing *Hall*, 935 F.2d at 1110); *see McCoy*, 887 F.3d at 1044. ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings." (Internal quotations omitted)).

## Discussion

### A. *Winter has waived his arguments on appeal because he has not supported them with citations to the record.*

In construing Winter's pro se filings liberally, this Court "cannot take on the responsibility of serving as [his] attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Further, "pro se parties

9

[must] follow the same rules of procedure that govern other litigants." *Id*. *See Palmer v Philpot*, 291 Fed. Appx. 206, 208 (10th Cir. 2008).

Fed. R. App. P. 28(a)(6) states that "[t]he appellant's brief must contain … a concise statement of the case setting out the facts relevant to the issues submitted for review, describing the relevant procedural history, and identifying the rulings presented for review, *with appropriate references to the record* (Rule 28(e))." (Emphasis added). Subsection (a)(8)(A) requires the appellant's brief to include "the argument, which must contain … appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies[.]"

10th Cir. R. 28(A) provides that "[f]or each issue raised on appeal, all briefs must cite the precise references in the record where the issue was raised and ruled on." Subsection (A)(2) states, "In cases without an appendix, references to the record should be to the record volume and page number (e.g., ROA Vol. II at 6)."

In his opening brief, Winter has a seven-page "Statement of Facts" with no record citations. (Opening Br. at 3-10). *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018) (faulting plaintiff's brief for failing

to follow Fed. R. App. P. 28(a)(6) by "provid[ing] [the Court] with a nine-page statement of facts with no record citations"). Moreover, the vast majority of Winter's factual arguments contain no record citations. (Opening Br. at 15-18, 22-31, 33, 35-38, 40-41). And what few citations he does provide cite district court document numbers and not the record on appeal, contrary to 10th Cir. R. 28(A)(2).

While this Court has the discretion to consider Winter's appeal, *Garrett*, 425 F.3d at 841, it should decline to "sift through the record to find support for [his] arguments." *United States v. Rodriguez-Aguirre,* 108 F.3d 1228, 1237 n.8 (10th Cir. 1997) (internal quotations omitted); *see Palmer*, 291 Fed. Appx. at 207-08 (finding that plaintiff waived his appellate argument because he "has wholly failed to support any issue with argument, evidence, or citations to the record, and has failed to comply with Rule 28 of the Federal Rules of Appellate Procedure").

## B.  *The district court correctly deemed Defendants' facts admitted.*

The district court found that Winter "fail[ed] to respond to most of Defendants' facts, as required by D. Kan. Rule 56.1(a)[,]" and that Winter often failed to cite to the record, or when he did, he failed to cite specific pages or paragraphs, pursuant to Rule 56(c)(1)(A) and D. Kan. Rule

56.1(b)(1). (ROA, Vol. III at 202). Therefore, the court deemed Defendants' facts admitted. (ROA, Vol. III at 202).

D. Kan. Rule 56.1(a) states that "[a]ll material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." In opposing summary judgment, the nonmoving party's memorandum "must begin with a section containing a concise statement of material facts as to which the party contends a genuine issue exists." D. Kan. Rule 56.1(b)(1). Further, "[e]ach fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed." *Id*.

In his opening brief, Winter explains that "[i]n some regards [it] is true" that he failed to provide any citation to the record, or failed to cite particular pages or paragraphs. (Opening Br. at 13). Winter then tries to show the places where he did, in fact, cite to the record. (Opening Br. at 14-16). Yet he only points to four examples of citations to the record, three of which are immaterial (e.g., medical staff did not clear him for segregation; no medical staff, video recording, or photography were

12

utilized during his time in B cell 131; and he was restrained at all times). (Opening Br. at 14-15). None of his examples create a triable issue of material fact.

More importantly, Winter does not explain why he ignored D. Kan. Rule 56.1(a) by failing to respond to 21 of the 48 indisputable material facts proffered by Defendants. (ROA, Vol. III at 6-12, 27). He does not say why he failed to provide any citation to the record or other evidence to support his responses in opposition to ¶¶ 16, 23, 25, 29, and 47-48 in Defendants' memorandum in support. (ROA, Vol. III at 8-10, 12, 28). And while Winter purported to respond to ¶¶ 2, 5, 7-9, 13, 15, 17, 19, 21, 25, 27, 30-31, 34-35, 37-38, 44-46, his brief does not explain why he did not cite to any particular page or paragraph of the record in support of his response, contrary to D. Kan. Rule 56.1(b)(1). (ROA, Vol. III at 6-12, 28). Simply put, Winter does not address his failure to follow D. Kan. Rules 56.1(a) and (b)(1) in all of his factual responses except for his response to Defendants' ¶ 36 ("Clinic staff were still unable to tend to the 'cut' on Winter's eyebrow"). (ROA, Vol. III at 10-11).

Like any litigant, Winter was required to follow the district court's local rules. *Garrett*, 425 F.3d at 840; *Barnes v. United States*, 173 Fed.

Appx. 695, 697 (10th Cir. 2006) (Pro se pleadings "must comply with minimum requirements established by local rules."). Because he failed to do so, the district court correctly deemed Defendants' facts admitted for purposes of summary judgment. (ROA, Vol. III at 202).

Beyond Winter's failure to follow the rules, the district court also found that Defendants' facts were uncontroverted because Winter "often fails to meet the substance of Defendants' statements … makes conclusory, self-serving, and contradictory claims, and his submissions contain demonstrably false facts and misrepresentations of the record." (ROA, Vol. III at 203). Winter continues the error in his opening brief.

For example, Winter argues that bloodwork would have showed any methamphetamine in his system, and the cheeked pills he swallowed were not methamphetamine. (Opening Br. at 30). Yet Winter conceded that he was high on methamphetamine and pills and did not recall what happened. (ROA, Vol. I at 73, 75, 157 [Carmen Baynham Aff. at ¶ 12], 232, 285-86). Moreover, there is no evidence of bloodwork reports, and Winter's conclusory assertion that "nothing was noted or documented" cannot be based on personal knowledge since he is not privy to medical

staff documentation practices. *See Hall*, 935 F.3d at 1111 ("nonmovant's affidavits must be based upon personal knowledge").

Winter maintains that Gladfelter pepper sprayed him while he was in the decontamination shower. (Opening Br. at 4). Yet the video evidence, medical records, and internal investigation blatantly contradict this claim. (ROA, Vol. I at 153-298 [Baynham Aff.]; Vol. II at 378-404, 550-59; Video H6 at 13:13:20-13:14:04). *See Scott*, 550 U.S. at 380.

Winter claims his left eye popped out of its socket after he was taken to the ground. (Opening Br. at 5-6, 21-22). The video evidence, as well as Winter's medical records, do not substantiate this claim, and Winter never reported such an injury to medical staff. (ROA, Vol. I at 153-298 [Baynham Aff.]; Video H9 at 13:23:00-13:23:14).

Winter states that when he was taken to the ground, "someone [was] punching him in the head," and "one of the officers grabbed [his] finger[,] yanking it hard, breaking it[.]" (Opening Br. at 5). Again, all record evidence blatantly contradicts these assertions. The video reveals that Winter was not punched in the head while he was on the ground at the clinic, nor was his finger yanked and broken by Gladfelter. (ROA, Vol. I at 21, 39; Video H8 at 13:15:25-13:25:35; Video H9 at 13:15:25-

13:25:35). Winter did not lose consciousness immediately (if he ever did), as he claims, because he continued to struggle and move once he hit the floor. (Video H8 at 13:15:25-13:15:45). Moreover, the medical records showed that Winter did not suffer a broken finger as a result of the incident. (ROA, Vol. I at 158-59 [Baynham's Aff. at ¶ 15], 224). The evidence also contradicts Winter's claim that he was "yanked up off the floor and slammed into a restraint chair where leg shackles were put on." (Opening Br. at 5; Video H8 at 13:19:50-13:20:35, 13:25:30-13:25:36).

Winter argues that in B cell 131, Defendants "dumped him on the floor face-first in the restraint chair" and then "had knees in his back[.]" (Opening Br. at 23). But no reasonable jury could believe this claim. Winter could not have had "knees in his back" if he was still strapped into the restraint chair. Moreover, he previously offered contradictory statements on this point. On the one hand, he claims that while he was strapped into the restraint chair, Defendants "dumped [him] head first into the concrete[.]" (ROA, Vol. I at 28). Yet he later claims "he was dumped face first *from* the restraint chair onto the floor face first." (Emphasis added) (ROA, Vol. III at 10). He cannot have been dumped from the chair if he was still strapped into it.

16

Winter continues to claim that he suffered multiple broken teeth and bit through his tongue during the incident in B cell. (Opening Br. at 24, 31-32). The record blatantly contradicts these claims. A Corizon dentist examined Winter and found "bruising to his tongue[,]" but "did not observe any laceration on his tongue or any broken teeth." (ROA, Vol. I at 317-18 [Roger Maechtlen Aff. at ¶¶ 2, 5]). On January 9, 2019, roughly two months after the incident, Winter had a dental exam with Dr. John Williamson. (ROA, Vol. I at 196; Vol. II at 430). Dr. Williamson found only one molar was fractured. (ROA, Vol. II at 430 [John Williamson, DDS, Aff. at ¶ 5). While Dr. Williamson could not rule out the possibility that the fracture occurred during the altercation in October 2018, he concluded that if the tooth was fractured then, "[he] would expect that the patient would have had pain immediately. However, [Winter] did not submit a sick call request complaining of dental pain until January 7, 2019." (ROA, Vol. II at 430-31 [Williamson Aff. at ¶ 7]).

Winter again argues that officers slit his wrists several times to make it look like he attempted suicide. (Opening Br. at 8, 17, 35-36). The medical record shows otherwise. Winter never mentioned slit wrists to

medical personnel, and there is no evidence of such injuries. (ROA, Vol. I at 153-298 [Baynham Aff.]; Vol. II at 983; Vol. III at 46-47 [John Cannon Decl. at ¶ 5], 49-50 [Brett Sissell Decl. at ¶ 4]). Winter's claim that "KDOC officials intentionally failed to take pictures of his injuries" also cannot be believed. (Opening Br. at 32). The record demonstrates that his injuries were photographed. (ROA, Vol. II at 979, 981-83). Winter does not argue that KDOC officials selectively photographed his injuries, thereby avoiding scabs or scars of slits on his wrists.

These examples confirm the district court's finding that Winter's "submissions contain demonstrably false facts and misrepresentations of the record[,]" and his "affidavit is either contradicted by video evidence or his own sworn statements." (ROA, Vol. III at 203-04). No reasonable jury could believe Winter's assertions. On this additional basis, the court correctly deemed Defendants' facts admitted. (ROA, Vol. III at 203-04). This Court should affirm.

## C.    *Defendants are entitled to qualified immunity.*

Winter claims the district court erred by granting Defendants' motion for summary judgment based on qualified immunity. (Opening Br. at 12). He spends much of his brief trying to show that he properly

controverted Defendants' factual assertions, rather than advancing a particular argument. But when he does get down to argument, he claims that he was subjected to excessive force when (i) Officer Corby choked him to the point of near unconsciousness; (ii) Defendants "savagely" beat him while he was in B cell 131; (iii) Officer Dunn intentionally clamped handcuffs on him too tightly; and (iv) Defendants Mansfield and Leon failed to intervene. (Opening Br. at 6-8, 21-41).

## *Qualified Immunity Standard*

In qualified immunity cases at summary judgment, a "plaintiff must demonstrate on the facts alleged … that the defendant violated his [or her] constitutional or statutory rights," and "that the right was clearly established at the time of the alleged unlawful activity." *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *see Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) (the clearly established right being "sufficiently clear that every reasonable official would have understood that what he is doing violates that right"). A defendant does not bear the traditional burden to show the absence of a triable issue unless the

19

plaintiff meets both elements. *Gutteridge*, 878 F.3d at 1238. The facts are viewed in Winter's favor, as the nonmoving party, but "[a]t this stage, [his] version of the facts must have support in the record." *Lehman v. McKinnon*, No. 20-1312, 2021 WL 4129229, at *2 (10th Cir. 2021) (citing *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018)).

Federal precedent offers two avenues for determining whether challenged conduct violates clearly established constitutional rights: "The plaintiff must show there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Colbruno v. Kessler*, 928 F.3d 1155, 1161 (10th Cir. 2019).

*Excessive Force Standard*

Regarding his Eighth Amendment excessive force claims, Winter must prove both an objective and a subjective element. *Marshall v. Milyard*, 415 Fed. Appx. 850, 852 (10th Cir. 2011). To establish the objective component, Winter must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation[.]" *Id*. Not every allegedly malevolent touch by a prison guard gives rise to a federal cause of action. *Hudson v. McMillian*, 503 U.S. 1, 10 (1992).

"Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society," only those physical punishments rising above *de minimis* uses of force "are sufficiently grave to form the basis of an Eighth Amendment violation[,]" provided that the force used is not of a sort "repugnant to the conscience of mankind." *Id.* at 9-10. *See Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). While the presence of an injury is not required, the presence or absence of an injury is a factor in the determination of whether a prison official's conduct constituted an objectively serious use of force. *See Northington v. Jackson,* 973 F.2d 1518, 1523 (10th Cir. 1992).

To establish the subjective component, Winter must show that Defendants "acted with a sufficiently culpable state of mind." *Marshall*, 415 Fed. Appx. at 852. The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319. Rather, Winter must establish that Defendants took their actions "maliciously and sadistically for the very purpose of causing harm" and not in a "good-faith effort to maintain or restore discipline[.]" *Id.* (emphasis added); *Hudson*, 503 U.S. at 7.

When deciding whether a defendant used force in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm, courts consider (1) the need for the application of force; (2) the relationship between the need and amount of force used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7; *Sampley v. Ruettgers*, 704 F.2d 491, 495 (10th Cir. 1983). The Eighth Amendment analysis must take into consideration the highly-charged prison environment and accord wide-ranging deference to prison officials. *Hudson*, 503 U.S. at 6; *Sampley*, 704 F.2d at 495-96.

### i.    *Officer Corby's actions during the second medical clinic evaluation.*

Winter claims in his complaint and affidavits that Corby "grabbed him from behind and choked him to the point of near unconsciousness several times while someone was forcing his left eye back in its socket." (Opening Br. at 21). Winter alleges that Corby was "choking him" so that Winter's "eye could be discretely pushed/popped back into its socket." (Opening Br. at 22). But as explained above, the record blatantly contradicts Winter's claim that his left eye was out of its socket, so no

22

reasonable jury could believe that it needed to be put back in its socket. *See Scott*, 550 U.S. at 380. Thus, the district court properly credited Corby's assertion that he applied pressure under Winter's jaw to hold his head still while medical staff tried to mend the injury to his eyebrow. (ROA, Vol. I at 305; Vol. III at 208).

Hence, Winter cannot satisfy either component of the excessive force test. On the objective component, even if this Court were to assume that Corby's handling of Winter's neck brought him near unconsciousness, Winter has not shown that he suffered anything more than a *de minimis* use of force. He did not allege any injury, so Corby's action was not "repugnant to the conscience of mankind." *See Hudson*, 503 U.S. at 9-10. *See also Norton v. The City of Marietta*, 432 F.3d 1145, 1156 (10th Cir. 2005) (grabbing defendant around the neck and twisting it was not objectively harmful enough to establish a constitutional violation); *Williams v. City of Montgomery*, 839 Fed. Appx. 356, 362 (11th Cir. 2020) (*de minimis* use of force where officer pushed plaintiff against wall and applied a choke-hold before handcuffing him, despite his non-resistance).

Regarding the subjective component, Corby's pressure on Winter's neck was necessary to hold his head still while stitches were applied, and again, Winter suffered no injury. Hence, Corby did not act maliciously and sadistically to cause Winter harm. *See Whitley*, 475 U.S. at 319.

Not only was there no Eighth Amendment excessive force violation, but Winter has failed to show that it was clearly established that officers could not use pressure on the neck of a resisting inmate to gain compliance for medical treatment purposes. *See Colbruno*, 928 F.3d at 1161. Winter has, therefore, failed to satisfy both prongs of qualified immunity.

### ii.    Use of force in B cell 131

Winter argues that Defendants Leon, Gladfelter, Chiles, Dunn, Corby, and other unknown officers rolled him to B cell 131 in a restraint chair with his feet bound and his hands cuffed behind his back. (ROA, Vol. III at 209; Opening Br. at 23). He claims he was dumped face-first on the floor while still in the chair and "savagely beaten" by "being struck all over his body," including being "punched, kicked, and stomped on [his] head and face" until "at least 4 teeth were broken" and he "was caused to bite through his tongue." (Opening Br. at 8, 23-24). He claims he was

24

restrained throughout so he could not offer any resistance. (Opening Br. at 24). He further alleges that as Gladfelter rolled him in the restraint chair, Gladfelter kept tipping the chair forward as if to dump Winter on his face, causing damage to several his toes. (Opening Br. at 24).

The record reflects Winter's acknowledgement that, during his stabbing of his cellmate and the two correctional officers, he was under the influence of methamphetamine. (ROA, Vol. I at 73, 232). As he was being transported to B cell, he swallowed drugs he had cheeked, which "were activating[,]" and he started experiencing extreme fear, paranoid thoughts, pain, and confusion. (ROA, Vol. I at 75). Winter says he yelled to other prisoners that officers had put out his eye and that he was not suicidal. (ROA, Vol. I at 75-76).

Prior to being taken to B cell, as medical staff attempted to treat the cut on Winter's forehead, the staff noted that he appeared to be under the influence of some substance and that he tried to bite them, spat at them, began yelling, and was uncooperative. (ROA, Vol. I at 155 [Baynham Aff. at ¶ 8], 305 [Corby Decl. at ¶ 5]). Winter's resistance is corroborated by the declarations submitted by his fellow inmates near the B cell. One alleged that the female officer in the cell said, "stop

resisting" "stop resisting." (ROA, Vol. III at 14). The other inmate alleged that he "confronted the O.I.C. Chad D. Clemons … and he responded with something along the lines [of] 'that got nothing to do with me, the Black Suits brought [Winter] in and he was fighting with them[.]'" (ROA, Vol. III at 22).

Defendants explained that Winter's resistance to efforts by medical staff to stitch his forehead at the clinic led to a team of officers escorting him to B cell in the restraint chair. (ROA, Vol. I at 301 [Gladfelter Decl. at ¶ 13], 305 [Corby Decl. at ¶¶ 7-8]). Upon arriving at the cell, the officers tried to loosen Winter's restraints on the chair, but he resisted by thrusting his abdomen forward and thrashing around. (ROA, Vol. I at 301 [Gladfelter Decl. at ¶ 15], 305 [Corby Decl. at ¶ 9], 307-08 [Chiles Decl. at ¶¶ 5-6], 310 [Dunn Declaration at ¶ 4]). As the officers began to release Winter's legs from the restraint chair, he began thrashing and kicking at the officers with shackled legs. (ROA, Vol. I at 301 [Gladfelter Decl. at ¶ 15], 305 [Corby Decl. at ¶¶ 9-10], 311 [Dunn Decl. at ¶ 5]).

At first, the officers tried to physically restrain Winter and resorted to joint and pressure manipulation techniques to gain compliance. (ROA, Vol. I at 301 [Gladfelter Decl. at ¶¶ 16-17], 305 [Corby Decl. at ¶ 10], 308

[Chiles Decl. at ¶ 7], 311 [Dunn Decl. at ¶ 6]; Vol. II at 960 [John Cannon Aff. at ¶15]). When this proved ineffective, the officers used targeted strikes to Winter's large muscle mass areas. (ROA, Vol. I at 301 [Gladfelter Decl. at ¶¶ 16-17], 305 [Corby Decl. at ¶ 10], 308 [Chiles Decl. at ¶ 7], 311 [Dunn Decl. at ¶ 6]). The officers then moved Winter to the floor for medical treatment and a strip search, where Winter spat and kicked at officers while attempting to bite them. (ROA, Vol. I at 302 [Gladfelter Decl. at ¶¶ 18, 20], 308 [Chiles Decl. at ¶ 8], 311 [Dunn Decl. at ¶ 7], 315). Winter's actions made it impossible for medical staff to treat his cut, which had reopened during his physical resistance and was bleeding profusely. (ROA, Vol. I at 139, 302 [Gladfelter Decl. at ¶¶ 21-22], 306 [Corby Decl. at ¶ 13], 315). At this point, officers placed Winter back in the restraint chair while he continued to kick at them. (ROA, Vol. I at 302 [Gladfelter Decl. at ¶ 23], 308 [Chiles Decl. at ¶¶ 10-12], 316). Once Winter was back in the chair and no longer being aggressive, the officers stopped using force. (ROA, Vol. I at 311 [Dunn Decl. at ¶ 8]).

The district court correctly noted that these "conflicting accounts may have created a genuine issue of fact for this claim." (ROA, Vol. III at 210). But as explained above, the court was right to credit Defendants'

facts because Winter failed to properly controvert them or to support his own alleged facts. (ROA, Vol. III at 210). As also explained above, Winter advances factual claims about the incident in B cell that are blatantly contradicted by the evidence (*e.g.*, his bloodwork would have showed if he was high on methamphetamine, his teeth being broken, his tongue being bitten through, and his wrists being slit). Therefore, the district court rightly found no genuine dispute over the fact that Winter's continued resistance justified the officers' targeted strikes in trying to obtain his compliance. (ROA, Vol. III at 211).

In addition, the medical evidence belies Winter's claim that he was "savagely beaten" by having his face and body kicked, stomped, and battered all over. A beating of this sort would have left significant bruises and cuts to his face beyond the cut on his eyebrow and revealed more than the "assortment of lumps [and] bruises" he claims he suffered. (Opening Br. at 24).

At bottom, there is no evidence of any such lumps, bruises, or cuts, and Winter offers none. (ROA, Vol. I at 154, 156-57 [Baynham Aff. at ¶¶ 5, 10, 12], 256, 263, 285-86). He explains that he had nasal surgery (Opening Br. at 33). But the record shows it was not conducted as a result

28

of the use of force here. (ROA, Vol. III at 57-59, 70-73, 76-78, 85-95, 104-08, 118-20, 123-29, 155-56).

Winter argues that the district court could not grant summary judgment "based on prison medical records that minimize injury to prisoners where there are sworn allegations, or that evidence [*sic*] of more serious injury." (Opening Br. at 32). Here, however, the medical records have not minimized any of Winter's alleged injuries from the incident in the cell. Rather, they show there are no such injuries. Winter's allegations are blatantly contradicted by the record, such that no jury could believe them, so they cannot create a triable issue of fact. *See Janny*, 8 F.4th at 901 (quoting *Scott*, 550 U.S. at 380).

Winter does not meet the objective element of his Eighth Amendment excessive force claim because other than the laceration to his eyebrow (which did not occur in B cell 131), he has not shown that the officers' strikes amounted to more than a *de minimis* use of force. Indeed, the force used against Winter escalated proportionally with his increasing resistance. And the evidence shows that he suffered no apparent additional injuries caused by the use of force in the cell.

At most, it is undisputed that Winter was bleeding as he was removed from the cell, but not from any new injury; only from the reopening of the cut on his forehead that he previously received at the clinic. (ROA, Vol. I at 43, 306 [Corby Decl. at ¶ 13], 315; Vol. II at 283). The officers' initial use of physical manipulation techniques, and strategically placed strikes when those techniques proved ineffective, were reasonable under the circumstances and certainly were not "repugnant to the conscience of mankind." *See Reyes v. Chinnici*, 54 Fed. Appx. 44, 47 (3d Cir. 2002) (officer's "single punch to avoid being spit upon" was *de minimis* and "not the sort of action that is 'repugnant to the conscience of mankind'"); *Trecker v. Kalinch*, No. CIV 17-276-RAW-SPS, 2019 WL 4781858, at *4-5 (E.D. Okla. Sept. 30, 2019) (no Eighth Amendment violation when officers' two knee strikes hit plaintiff in the upper torso and facial area after inmate refused to obey orders and was aggressive towards the officers).

Winter also cannot meet the subjective element of his excessive force claim because the uncontroverted evidence shows that Winter needed medical care and a strip search before he could be transported to HCF, and that he continued to be erratic, resistant, and uncooperative in

the cell. (ROA, Vol. I at 155-56 [Baynham Aff. at ¶ 9], 268-69, 301-03 [Gladfelter Decl. at ¶¶ 15-23, 25], 305-06 [Corby Decl. at ¶¶ 9-10, 14], 307-09 [Chiles Decl. at ¶¶ 5-13], 310-11 [Dunn Decl. at ¶¶ 4-7], 315-16). Thus, the officers needed to apply force to gain Winter's compliance and protect the officers from being injured. The force that they used was proportional to the need, as evidenced by the fact that Winter suffered no further additional injuries in the cell. Further, the officers tempered the severity of their forceful response by using physical manipulation techniques and strikes targeted to muscle mass sections of Winter's body. Winter's speculation that officers were retaliating against him for stabbing two officers does not create a genuine issue on this point. The properly supported record shows that the officers used force in a good-faith effort to maintain discipline. *See Hudson*, 503 U.S. at 7.

Given Winter's failure to show an Eighth Amendment violation, he has not satisfied the first prong of the qualified immunity test. *See Gutteridge*, 878 F.3d at 1238. He also fails to overcome the second prong because he does not provide any federal case law clearly establishing that officers cannot use physical manipulation techniques, followed by targeted strikes, to gain compliance for a strip search and medical

31

treatment on an aggressive and resisting inmate. *See Piedra v. True*, 169 F. Supp. 2d 1239, 1243 (D. Kan. 2001), *aff'd* 52 Fed. Appx. 439, 441 (10th Cir. 2002) (granting qualified immunity on claim that prison officials beat handcuffed prisoner where officials gave evidence that plaintiff had been swinging a telephone, kicking, and spitting at them).

This Court should find that Defendants are entitled to qualified immunity regarding their use of force on Winter in B cell 131.

### iii.    Officer Dunn's use of handcuffs

Winter argues that Officer Dunn "overly tightened" handcuffs on his wrists, which Dunn knew had already been intentionally cut, and Dunn did so while Winter was fully restrained behind a barrier in the back of a transport van. (Opening Br. at 35, 38). Winter further argues that Dunn's actions caused him intense pain at the time and left lasting injuries to his wrists. (Opening Br. at 35-36, 38).

Winter's argument fails because he cannot meet both the subjective and objective grounds required for an Eighth Amendment excessive force claim based on handcuffing. First, Winter cannot satisfy the subjective component: that Dunn acted maliciously and sadistically to cause him harm. *See Hudson*, 503 U.S. at 7.

Winter acted with paranoid violence on the day in question, stabbing his cellmate and two officers. He was under the influence of methamphetamine. As explained in the previous section, he was resisting officers' attempts to obtain compliance, acting in an erratic, aggressive, and uncooperative manner. Hence, as the district court correctly found, Dunn had a duty to maintain discipline by securing Winter. (ROA, Vol. III at 213). *See Stevenson v. Cordova*, 733 Fed. Appx. 939, 945 (10th Cir. 2018) (finding no Eighth Amendment violation when tight handcuffs "cut deep into [plaintiff's] skin" and were not loosened for an hour because plaintiff was resisting restraint).

Winter points to nothing that indicates Dunn acted with malice, other than Dunn's response to an alleged apology by Winter with the words, "You should [have] thought about that before." (Opening Br. at 35). This remark does not nullify Dunn's good-faith effort to maintain discipline of a resistant inmate, and it fails to establish that Dunn acted with malice and sadism for the purpose of harming Winter. *See Hannula v. City of Lakewood*, 907 F.2d 129, 132 (10th Cir. 1990) (holding that although officer's anger at plaintiff when handcuffing her "may be probative of malice, it certainly does not establish it").

33

Winter also cannot satisfy the objective component. It is true that "unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints … that the handcuffs were too tight." *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007). *See Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1208 (10th Cir. 2008) (an excessive force plaintiff who relies on "unduly tight handcuffing" must show "some actual injury"). But the mere showing of "some actual injury" does not by itself establish that a plaintiff's constitutional rights were violated by overly-tight handcuffing. Rather, Winter must demonstrate that Dunn's tight handcuffing was "sufficiently grave" and not "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10.

The record shows that Winter's wrists were photographed by KDOC Special Agent Supervisor, John Cannon, on November 9, 2018—14 days after the incident. (ROA, Vol. II at 978). These photographs show minor scabbing on the outside of his right wrist, minimal skin peeling on the outside of his left wrist, and some slight redness. (ROA, Vol. II at 983). Winter submitted numerous health service requests between November 2018 and March 2021, complaining of pain and nerve damage in his

wrists, (ROA, Vol. II at 1346-91). Yet on October 31, 2018, just days after the incident, Winter complained to medical staff of only "slight pain [to] both wrists and "[d]enies any numbness/tingling/weakness." (ROA, Vol. I at 239-40). Medical staff indicated he had full range-of-motion and "[p]ain is well controlled on Ibuprofen." (ROA, Vol. I at 240). About a month later, medical staff found no bruising or deformity on his right hand, no other swelling to his hands, and strong and equal grip strength. (ROA, Vol. I at 217, 219). In March 2021, Winter told medical staff that "he continues to have pain and says that he was told several years ago by a Neurologist that his Carpal tunnel is the cause of his pain in the wrists[.]" (ROA, Vol. III at 162-63).

Winter's assertions of ongoing severe pain, which contradict his earlier complaint of only of "slight pain," do not establish that he suffered any serious injury. *See Hall*, 935 F.2d at 1111 ("conclusory and self-serving affidavits are not sufficient"). Moreover, Winter has not produced evidence that he incurred "permanent nerve damage," as he claims. (Opening Br. at 36, 39). *See Beaulieu v. Ludeman*, 690 F.3d 1017, 1033 (8th Cir. 2012) (no excessive force where plaintiffs did not present medical records showing they suffered long-term or permanent physical

injury from handcuffing). The properly supported evidence shows that any injury to his wrists was *de minimis*, and thus, he has failed to satisfy the objective prong of the excessive force test. *See Cortez*, 478 F.3d at 1129; *Folts v. Grady Cty. Bd. of Cty. Commissioners*, No. CIV-15-996-M, 2017 WL 11557929, at *5 (W.D. Okla. 2017), *report and recommendation adopted*, 2017 WL 11558076 (W.D. Okla. 2017) (objective component of excessive force claim not satisfied where defendants failed to loosen hand restraints during five-hour van ride, resulting in pain, psychological trauma, skin abrasions on both wrists, erythema in left wrist, and decreased grip strength).

Winter's failure to prove that Dunn violated his constitutional rights means he has not satisfied the first element of the qualified immunity test, so his claim lacks merit. Alternatively, he fails to satisfy the second element of the qualified immunity test. He does not identify case law showing that the use of tight handcuffs on an inmate with a history of violence against officers—as well as bizarre, aggressive, and resistant behavior—was unconstitutional, particularly where a *de minimis* injury resulted from the handcuffing. *See Stevenson*, 733 Fed.

Appx. at 946 (not clearly established that refusal to loosen handcuffs is an Eighth Amendment violation).

The district court correctly held that Winter failed to satisfy both prongs of the qualified immunity test. This Court should affirm.

### iv.   Summary judgment was appropriate on Winter's claim that Mansfield and Leon failed to intervene.

On this point, Winter argues that "Leon and Mansfield were present when Plaintiff was beaten in cell [*sic*] and if this court finds a constitutional violation did indeed occur[ ] when the other defendants beat him, defendants Leon and Mansfield must be reinstated to suit[.]" (Opening Br. at 41).

At the outset, the district court correctly found no well-supported facts showing that Mansfield was present during the series of events on October 26, 2018. (ROA, Vol. III at 215, n. 7). Mansfield swore he did not arrive at EDCF until around 1:30 p.m. for his 2:00 p.m. shift, and when he arrived, he escorted Warden Cline through the facility. (ROA, Vol. I at 152 [Mansfield Decl. at ¶ 5]). Since the incident at the medical clinic occurred at 1:15 p.m., (Video H8 at 13:15:23), and the incident in B cell happened around 2:00 p.m., (ROA, Vol. I at 315), Mansfield could not

have been present at either of the incidents. (ROA, Vol. I at 152 [Mansfield Decl. at ¶ 6]).

In his response to Defendants' summary judgment motion, Winter argued that Mansfield was present when he was taken to the ground in the medical clinic. (ROA, Vol. II at 1327, ¶ 17). Yet Winter's description of Mansfield's presence at this incident is accompanied by numerous assertions that are clearly contradicted by the video evidence. As explained above, video footage shows that no one punched Winter in the head, yanked his pinky finger, punched him in the side, or grabbed his head and slammed his face into the ground. (ROA, Vol. II at 1327, ¶ 17). Winter's fantastical claims do not create a genuine issue of material fact regarding Mansfield's presence in the clinic.

Regarding Winter's claim that Mansfield was present when Winter was beaten in the cell, Winter never argued to the district court that Mansfield was there. (ROA, Vol. II at 1328-31, ¶¶ 20-24; Vol. III at 6-7). And as before the district court, Winter here fails to show there is a genuine issue on whether an "affirmative link" exists between the uses of force and Mansfield's exercise, control, direction, or failure to

supervise. (ROA, Vol. III at 215, n. 7). Therefore, there is no basis for Winter's claim against Mansfield.

Winter's argument against Leon (and Mansfield, too) is reduced to the proposition that officers can be liable for their failure to intervene, and Leon was present during the use of force in the cell. (Opening Br. at 40-41). Winter does not explain the necessary elements that must be satisfied for a plaintiff to succeed on a failure to intervene claim, nor does he explain how Leon (or Mansfield) meets those elements. Hence, he has failed to brief this issue, and it is waived. *Garrett*, 425 F.3d at 841 (failure to brief an issue constitutes waiver).

In any case, as explained in the previous sections, no Defendant here used excessive force in violation of the Eighth Amendment. Thus, the district court correctly held that "Mansfield and Leon cannot be liable for failure to protect from an Eighth Amendment violation when one did not occur." (ROA, Vol. III at 214-15). *See Rowell v. Bd. of Cty. Commissioners of Muskogee Cty.*, 978 F.3d 1165, 1175 (10th Cir. 2020) ("[A] plaintiff can maintain a claim for failure to intervene only when some other officer used excessive force."). This Court should affirm.

## II.   The district court rightly declined to invoke supplemental jurisdiction over Winter's unspecified state law claims.

Winter argues that if this Court "reinstates" his claims against Defendants for excessive force, "then the supplemental state law claims must also be reinstated." (Opening Br. at 42).

### *Standard of Review*

This Court reviews the district court's decision declining to exercise supplemental jurisdiction for an abuse of discretion. *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020).

### *Winter has waived this issue on appeal, and in any case, the district court did not abuse its discretion.*

Winter does not argue that the district court abused its discretion in declining to exercise supplemental jurisdiction. Nor has he provided any analysis of the doctrine of supplemental jurisdiction. Therefore, he has waived this issue. *See Garrett,* 425 F.3d at 841.

In any case, since Winter's federal claims were dismissed before trial, his state law claims were appropriately dismissed as well. *See Strain*, 977 F.3d at 997. This Court should find the district court did not abuse its discretion by declining to exercise supplemental jurisdiction over his state law claims.

## CONCLUSION

For the foregoing reasons, Defendants respectfully ask this Court to affirm the district court's August 27, 2021, Order granting Defendants' motion to dismiss, or in the alternative, for summary judgment.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

/s/ *Michael J. Duenes*
Michael J. Duenes (KS No. 26431)
Assistant Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, KS 66612-1597
Tel: (785) 296-2215
Fax: (785) 291-3767
Email: michael.duenes@ag.ks.gov
*Attorney for Defendant-Appellee*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 8297 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(b), as calculated by the word-counting function of Microsoft Word.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface—14-point Century Schoolbook—using Microsoft Word.

41

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that a copy of the foregoing BRIEF OF DEFENDANTS-APPELLEES, as submitted in digital form via the court's ECF system, is an exact copy of the written document filed with the Clerk.

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2022, the foregoing BRIEF OF DEFENDANTS-APPELLEES was electronically filed with the Clerk of the Tenth Circuit Court of Appeals using the CM/ECF system. I certify that I caused seven paper copies to be delivered by Federal Express to the Clerk's Office within five business days of this filing. I further certify that I cause one paper copy to be deposited in the United States Mail, first-class postage prepaid to:

Mr. Douglas Winter, # 56375
Lansing Correctional Facility
P.O. Box 2
Lansing, KS 66043
*Appellant Pro Se*


DATED: March 7, 2022                    */s/ Michael J. Duenes*
                                        Michael J. Duenes
                                        Assistant Attorney General

## ATTACHMENTS

### 10th Cir. R. 28.2(B) ATTACHMENTS

Addendum A            District Court Order (Doc. 76)

Addendum B            Judgment (Doc. 77)

### Fed. R. App. P. Rule 28(f) ATTACHMENTS

Addendum C            Fed. R. App. P. 28

Addendum D            Fed. R. App. P. 32

Addendum E            Fed. R. Civ. P. 56

Addendum F            10th Cir. R. 28

Addendum G            D. Kan. Rule 56.1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**DOUGLAS WINTER,**

    **Plaintiff,**

    **v.**

**PATRICK MANSFIELD, et al.,**

    **Defendants.**

**Case No. 5:19-cv-03236-HLT-TJJ**

## <u>ORDER</u>

Plaintiff Douglas Winter brings this pro se 42 U.S.C. § 1983 action for monetary damages against several correctional officers for violating his Eighth Amendment rights while he was incarcerated at Eldorado Correctional Facility ("EDCF").[1] The crux of Winter's allegations are that he was subjected to cruel and unusual punishment after he stabbed his cellmate and two corrections officers. Defendants—Captain Patrick Mansfield, Corrections Supervisor Melissa Leon, and Officers Brett Corby, Austin Dunn, Jordon Gladfelter, and Stephen Chiles (collectively "Defendants")[2]—move to dismiss or in the alternative for summary judgment on sovereign immunity and qualified immunity grounds. For the following reasons, the Court dismisses Winter's official capacity claims on sovereign immunity grounds and grants summary judgment on his individual capacity claims because qualified immunity shields Defendants.

---

[1]   The Court is mindful of Winter's pro se status and liberally construes his pleadings and holds them to a less stringent standard than formal pleadings drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court does not assume the role of advocate. *Id.*

[2]   Winter has also sued unknown defendants and Corizon, LLC. The previously assigned district judge dismissed Corizon from this case. Doc. 28. The case was reassigned to the undersigned on February 15, 2021. Doc. 44.

# I.     BACKGROUND

The parties agree on the following overarching facts. Winter was incarcerated at EDCF. On October 26, 2018, Winter's "paranoia got the best of him," and he stabbed his cellmate, requested to go to the clinic, and stabbed two officers. Doc. 1 at 6-7. Winter reported that he was high on methamphetamine and paranoid and that he did not remember everything that happened. Officers pepper sprayed him and handcuffed him. The officers then used a "modified escort position" to take him to the medical clinic, which entailed the officers lifting Winter's handcuffed arms over his head with their outside hands and reaching under and pushing Winter's head down with their inside hands.

Winter was evaluated at the clinic, where it was found that he had suffered no injuries. He was then taken to a shower to decontaminate from the pepper spray. During the escort from the shower, Winter was taken down to the ground and sustained a cut to his eyebrow and forehead. Officers then pinned Winter down while medical staff attempted to treat his cut. After about ten minutes, officers manacled Winter's legs, placed a spit mask on his head, placed him in a restraint chair, and rolled him into the clinic for another medical assessment.

After this assessment, officers took Winter to a cell in the restraining chair with his hands and ankles handcuffed. Officers used force on him in the cell. Winter was then transported, while handcuffed and in the restraining chair, to Hutchinson Regional Hospital where he received stiches down the left side of his face.

# III.    ANALYSIS

Winter alleges Eighth Amendment cruel and unusual punishment claims against Defendants and seeks compensatory and punitive damages. Defendants contend that the Eleventh Amendment bars Winter's official capacity claims and move to dismiss them under Rule 12(b)(1).

They also argue that qualified immunity shields them from Winter's individual capacity claims and move to dismiss under Rule 12(b)(6) or alternatively move for summary judgment under Rule 56. Doc. 41. For the reasons stated below, the Court dismisses Winter's official capacity claims and grants summary judgment on Winter's individual capacity claims.

**A.      Dismissal of Official Capacity Claims**

Winter sues Defendants for monetary damages in their official capacities. Eleventh Amendment immunity bars his claims. Eleventh Amendment immunity is appropriately considered under Rule 12(b)(1) and protects nonconsenting states from federal lawsuits by private individuals. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (noting that "an assertion of Eleventh Amendment immunity concerns the subject matter jurisdiction of the district court"); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). The immunity protects not only states, but also state agencies and state officials sued in their official capacities. *Graham*, 473 U.S. at 169.

Winter's official capacity claims against Defendants are de facto claims against the Kansas Department of Corrections, which is an agency of the State of Kansas and protected by Eleventh Amendment immunity. *See e.g.*, *Jones v. Courtney*, 466 F. App'x 696, 699 (10th Cir. 2012); *Payne v. McKune*, 2007 WL 60941, at *1-2 (D. Kan. 2007) (finding Eleventh Amendment immunity barred the plaintiff's official capacity claims asserted against KDOC employees). Thus, Winter's official capacity claims against Defendants are barred unless he can establish an exception to this immunity.

The case law indicates that Eleventh Amendment immunity is robust and is defeated only in limited circumstances that are not present in this case. *See Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (identifying three circumstances: (1) a state consents; (2)

Congress abrogates immunity under Section 5 of the Fourteenth Amendment; or (3) a plaintiff seeks prospective relief against an ongoing violation of federal law).

Here, Winter has not shown that the State of Kansas consented to suit by statutory or constitutional provision or that it implicitly consented to suit by voluntarily participating in a federal program when Congress expressly conditioned state participation in that program on the state's consent to suit in federal court. *Arbogast v. Kan. Dep't of Labor*, 789 F.3d 1174, 1182 (10th Cir. 2015). He has not shown that Congress abrogated this immunity when it enacted § 1983. *Ruiz*, 299 F.3d at 1181 (noting that § 1983 did not abrogate the states' Eleventh Amendment immunity). Lastly, Winter solely seeks monetary damages and does not seek prospective relief against an ongoing violation.

Accordingly, the Court finds that Eleventh Amendment immunity bars any official capacity claims against Defendants and dismisses those claims without prejudice.[3]

### B.     Summary Judgment on Individual Capacity Claims

Winter has also sued Defendants in their individual capacities for monetary damages. Defendants move to dismiss or alternatively for summary judgment based on qualified immunity. Because the Court considers the Martinez Report and other materials outside the pleadings to resolve this motion, the Court applies the summary judgment standards. *See McDiffett v. Nance*, 2019 WL 4736951, at *3 (D. Kan. 2019) (applying summary judgment standard because the court considered materials outside of the pleadings—namely, the Martinez Report—when resolving the alternative motion); *cf. Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining

---

[3]   Alternatively, Winter's § 1983 claims against Defendants in their official capacities fail under Rule 12(b)(6) because he cannot prove an element of his prima facie case: that a person deprived him of his federally protected rights. The Supreme Court has held that states, state agencies, and—except in actions for prospective relief—state officials sued in their official capacities are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 n.10 (1989).

4

whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes.").

Summary judgment is appropriate where the moving party demonstrates that "there is no genuine dispute as to any material fact" and it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Nevertheless, when the defendant asserts the qualified-immunity defense, the plaintiff must show that: (1) the defendant violated his constitutional rights, and (2) the constitutional right was clearly established at the time of the violation. *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019). Courts may decide which element to address first. *Id.* In determining whether the plaintiff has met his burden in the summary judgment context, courts must view the facts and any reasonable inferences that might be drawn therefrom in the light most favorable to the plaintiff, as the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

To resolve this motion, the Court first determines the factual record and then turns to the merits.

### 1.   Factual Record

The Court deems Defendants' facts admitted for purposes of summary judgment for two reasons: (1) Winter fails to properly controvert Defendants' statement of material facts; and (2) Winter otherwise fails to create a genuine issue of material fact. For the same reasons, the Court finds that Winter has not properly supported most of his facts.

a. **Failure to properly controvert Defendants' statement of facts**

The Court begins with several failures in Winter's response to Defendants' statement of facts. First, Winter fails to respond to most of Defendants' facts, as required by D. Kan. Rule 56.1(a). Therefore, those uncontroverted facts are deemed admitted. *Id.* Second, many of Winter's responses fail to provide any citation to the record and, the ones that do provide a citation, fail to cite to particular pages or paragraphs as required by Rule 56(c)(1)(A) and D. Kan. Rule 56.1(b)(1). *See Coleman v. Blue Cross Blue Shield of Kan., Inc.*, 287 F. App'x 631, 634-35 (10th Cir. 2008) ("[I]t is not the court's responsibility to conduct a fishing expedition of plaintiff's affidavit or any other record evidence in order to support the assertions made in her response." (internal quotation omitted)). Similarly, most of Winter's factual contentions are unsupported by citations to the pages or paragraphs of the records.

Winter's pro se status does not excuse his noncompliance especially because Defendants complied with D. Kan. Rule 56.1(f) and sent Winter the required notice for motions for summary judgment. *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (noting the Tenth Circuit has "repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants"). This includes compliance with the District's local rules. *See Hamilton v. Dep't of Veterans Affairs*, 2016 WL 7326280, at *1 (D. Kan. 2016). Because Winter has failed to follow the proper procedure and has not properly controverted the facts supported and offered by Defendants, the Court deems Defendants' facts admitted for purposes of summary judgment. Fed. R. Civ. P. 56(e)(2). And, unless otherwise noted, the Court finds that Winter has not come forward with any additional properly supported facts generating a genuine issue of material fact. *Id.*

**b.      Failure to Create a Material Issue of Fact**

Even putting aside Winter's failure to properly controvert Defendants' statement of material facts, he often fails to meet the substance of Defendants' statements, he makes conclusory, self-serving, and contradictory claims, and his submissions contain demonstrably false facts and misrepresentations of the record. For this alternative reason, the Court finds that Defendants' facts are not controverted and Winter's are not properly supported.

As an example of Winter's failure to meet the substance of Defendants' statements, he quibbles with Defendants' assertion that he committed at least three batteries against prison staff, explaining that all three occurred in the same incident. As an example of the conclusory, contradictory, and self-serving nature of Winter's claims, he contests Defendants' claim that he behaved as if he were under the influence drugs. He cites the Martinez Report and the motion to dismiss for the proposition that toxicology reports found no trace of drugs in his system. Neither submission includes anything about toxicology reports, and it does not appear that any toxicology reports were done. He then admits in his affidavit that he reported methamphetamine use to medical personnel on the day of the incident but explains that he lied in hopes of avoiding additional beatings. Doc. 1-1 at 41. He finishes that it was not until just before the second clinic visit that he swallowed "cheeked" pills and became paranoid. *Id.* at 43. So Winter both admits and denies that he took methamphetamine on the day in issue.

Finally, several of Winter's claims are "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott*, 550 U.S. at 380 (finding that the plaintiff's account of a car chase was blatantly contradicted by video evidence). First, Winter alleges that when he was decontaminating from the pepper spray, Officer Gladfelter "lean[ed] against the wall outside the shower [while] dispensing more pepper spray into [Winter's] face." Doc. 1-1 at 6-7. Second,

Winter alleges that, after he was taken down and temporarily lost consciousness, Officer Gladfelter broke his pinky finger. Then he was beaten "so severely that his left eye [] popped out of its socket . . . ." Doc. 1 at 16. Third, Winter alleges that, as he was being rolled in the restraint chair to transport, Officers Corby and Dunn discussed how to cut his wrists and make it look like a suicide. Then someone made several cuts to his wrists.

But video evidence shows that Winter was neither pepper sprayed in the shower, nor was his finger broken or his person beaten after the take down. Pictures reflect scabs on the sides of his wrists, which an investigator attributed to handcuffs. No reasonable jury could find that they were caused by a person slitting Winter's wrists.

For all these reasons, the Court finds that Winter's affidavit is either contradicted by video evidence or his own sworn statements. The Court finds that these statements in his sworn submissions do not create a genuine dispute for Defendants' facts and, except as noted below, deems none of Winter's additional facts supported by such demonstrably false evidence.[4]

## 2.      Merits

Having determined the factual record, the Court turns to the merits. Winter groups Defendants' remaining alleged actions into two "counts" of cruel and unusual punishment. First, he alleges that he was maliciously battered multiple times by staff while he was fully restrained. Second, he alleges that Mansfield and Leon failed to protect him after they made threats to physically injure him, which caused the malicious acts of excessive force. Doc. 1 at 15-16. The

---

[4]   Although the Court deems Defendants' facts admitted, the Court did review the record evidence cited by Defendants and has confirmed that it supports the asserted facts. The Court also considers a forensic evaluation report authored on June 15, 2021, which Winter sought leave to file a week later. Doc. 71-1. The Court notes that the descriptions of force therein were self-reported. Accordingly, for the above reasons, the Court finds that the evaluation does not create a genuine dispute of fact regarding the nature of the force used.

Court begins with the alleged excessive use of force against Winter and then addresses Mansfield's and Leon's alleged causation and failure to protect.

### a. Excessive Force

The Eighth Amendment protects inmates from "cruel and unusual punishments." U.S. Const. amend. VIII. The amendment proscribes the use of excessive force against prisoners. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Excessive force claims have an objective and subjective component. *Id.* at 8. To establish the objective component, the plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id.* Physical punishment must rise to more than a de minimis use of force, "provided that such force 'is not of a sort repugnant to the conscience of mankind.'" *Id.* at 9-10 (citation omitted). There is no threshold injury requirement, but the extent of injury may provide some indication of the amount of force applied. *Wilkins v. Gaddy*, 559 U.S. 34, 37-39 (2010). Not every malevolent touch, push, or shove violates the Eighth Amendment. *Hudson*, 503 U.S. at 9.

To establish the subjective component, the plaintiff must show that the defendant "act[ed] with a sufficiently culpable state of mind." *Id.* at 8. The component "turns on whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 6 (citation omitted). The following factors are relevant to this determination: (1) the need for the application of the force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the officials; and (5) any efforts made to temper the severity of a forceful response. *Id.* at 7.

Here, in addition to the above blatantly contradicted allegations, Winter references the modified escort position, the take down, the uses of force during the second clinic evaluation and

after he was taken to the cell, and the use of tight handcuffs. The Court analyzes each action in turn to determine whether qualified immunity shields Defendants. Importantly, the Court notes that Winter did not substantively respond to Defendants' legal arguments and such arguments are now waived.

### i.       The modified escort position

First, Winter contends that two Defendants wrenched his arms over his head so high that he was forced to walk to and from the clinic bent over with his face and head below his waist such that he could only see the ground, which almost caused him to do a faceplant. Although Winter makes the conclusory statement that the position caused him excruciating pain, he does not contend that he suffered any injuries from being placed in the modified escort position.

The Court starts with the first prong of the qualified-immunity analysis.  It is doubtful that Winter has shown that a reasonable jury could find that the alternate escort position was more than a de minimis use of force or repugnant to the conscience of mankind so as to satisfy the objective component of his excessive force claim. *See Reed v. Smith*, 1999 WL 345492, at \*4 (10th Cir. 1999) (inmate's allegations that prison officials grabbed him, tried to ram him into a wall and dragged him while walking him through the prison were insufficient to state an excessive force claim) (cited in *Rhoten v. Werholtz*, 243 F. App'x 364, 367 (10th Cir. 2007)).

Regardless, Winter fails to come forward with evidence from which a reasonable jury could find the subjective component. The parties agree that Winter had just stabbed three people before the first escort. Defendants contend that Winter acted erratically by shaking his head and shoulders, as if under the influence, making the escort difficult. Defendants also contend that Winter was spitting at Officer Gladfelter while Winter was using the shower. Both officers were suspended for use of the position, but failure to comply with administrative directives, alone, is not enough

10

to establish maliciousness. *Gulley v. Limmer*, 2020 WL 1916787, at *5 (D. Conn. 2020). Given Winter's provocation and the lack of injury, no reasonable jury could find that placing Winter in the modified escort position was malicious. *See Wheeler v. Fritz*, 2015 WL 4485436, at *12 (D. Md. 2015) (finding no Eighth Amendment violation when officers pushed a spitting inmate's head down and raised his hands above his head); *see also Saucier v. Katz*, 533 U.S. 194, 195 (2001) (holding, in Fourth Amendment context, that officers may use more force than necessary when they reasonably expect that a suspect will fight back). Thus, Winter has not overcome the first prong of the qualified-immunity analysis.

Alternatively, Defendants are entitled to summary judgement on these allegations because Winter has not directed the Court to authority demonstrating that use of the modified escort position in this context was a clearly established Eighth Amendment violation. Although he cites a few cases in his response, none address the context of this claim. Therefore, he fails to overcome qualified immunity for this additional reason.

### ii.      The take down

Second, Winter alleges that the take down was gratuitous and caused him to hit his head on the floor and temporarily lose consciousness. According to Defendants, as Officers Hamilton and Gladfelter escorted Winter from the shower through the pill line area of the clinic, Officer Hamilton initiated a takedown of Winter. Gladfelter was unprepared for the maneuver and was dragged down with them. Winter slammed his head and sustained a cut to his forehead and eyebrow.

The Court again starts with the first prong of the qualified-immunity analysis. The take down may be more than a de minimis use of force satisfying the objective component with respect

to Officer Hamilton. But Officer Hamilton is not a party to this suit.[5] The video evidence corroborates Defendants' account that Officer Gladfelter did not initiate the take down. He was dragged down with Winter. Therefore, Winter has not shown that a reasonable jury could find that Officer Gladfelter was responsible for the take down, let alone that he had malicious intent. Thus, Winter fails to overcome the first prong of qualified immunity.

Alternatively, Defendants are entitled to summary judgement on these allegations because Winter has not directed the Court to authority demonstrating that Officer Gladfelter's behavior under the facts of this case constitutes a clearly established Eighth Amendment violation. Although he cites a few cases in his response, none address the context of this claim. Therefore, Winter fails to overcome qualified immunity for this additional reason

### iii.   Use of force during second clinic evaluation

Third, Winter argues that, during his second clinic evaluation, someone gripped his "head upward" choking him. Defendants contend that Winter continued to act erratically while medical personnel attempted to apply stitches to the cut, so Officer Corby attempted to hold Winter's head still. Winter thrashed his head around, so Officer Corby applied pressure to points under his jaw. The medical personnel advised that Officer Corby's use of force was ineffective and that they could not safely suture the cut.

The Court again starts with the first prong. For the reasons stated above, the Court finds that Winter has not created a genuine issue of fact on the nature of Officer Corby's use of force. Accordingly, Officer Corby was acting with the intent of aiding Winter's medical care. Winter

---

[5] The complaint names Officers Gladfelter and Corby as responsible for the take down. The Martinez Report and Defendants' submissions name Officer Hamilton as the one who initiated the take down and note that he is not a party to this action. Winter's responses now agree that Officer Hamilton initiated the take down. *See* Doc. 54 at 3 ¶ 5. Winter has neither amended his complaint nor served Officer Hamilton, since the Martinez Report was filed on September 14, 2020. Doc. 32. Accordingly, the Court dismisses a claim against Officer Hamilton for the take down without prejudice.

may have experienced pain and discomfort, but he alleges no injury. Therefore, no reasonable jury could find excessive force as required for the first prong of qualified immunity. *See Norton v. The City of Marietta*, 432 F.3d 1145, 1156 (10th Cir. 2005) (grabbing and twisting of inmate's neck was not objectively harmful enough to establish an Eighth Amendment excessive force claim); *Roper v. Grayson*, 81 F.3d 124, 125-26 (10th Cir. 1996) (finding no Eighth Amendment violation when the defendants applied a "knuckle screw" technique to force the plaintiff's jaw open, while a nurse injected insulin down his throat).

Alternatively, Winter again fails to direct the Court to case law demonstrating that it was clearly established that the officers could not use pressure manipulation techniques to attempt to gain compliance for medical treatment under these circumstances. Although he cites a few cases in his response, none address the context of this claim. Therefore, Winter also fails to overcome the second prong of qualified immunity.

### iv.    Use of force in cell 131

Fourth, Winter claims that Leon, Gladfelter, Chiles, Dunn, Corby, and two other officers rolled him in the restraint chair to a cell.[6] He alleges that they dumped him on the ground while he was still strapped in the chair causing his face to hit the floor, punched him all over but mainly in his testicles, kicked him in the face, and stomped on his head breaking several teeth in half and causing him to bite through his tongue. He claims that he offered no resistance throughout. Finally, he claims that Officer Gladfelter repeatedly tipped the restraint chair forward pretending to dump Winter out of it after the chair had been righted. He alleges that the action damaged three of his toes.

---

[6]   Winter's complaint only names Officer Chiles. Defendants' submissions identify the other officers' involvement.

Winter admits that he "swallowed some drugs [he] had 'cheeked'" by the time he was rolled to the cell. Doc. 1-1 at 43. While he was being transported, the drugs "activat[ed]," and he started to experience extreme fear, paranoid thoughts, pain, and confusion. *Id.* He reports yelling to prisoners that officers had poked out his eye and that he was not suicidal. *Id.* at 43-44. Winter has also submitted affidavits from two other inmates. One attests to being in the cell above and hearing Winter's repeated cries that they were trying to kill him and "cut his balls off." Doc. 53-2 at 1. The inmate also attested that Winter was covered in his own blood when Winter was rolled out of the cell.

Defendants explain that several officers took Winter to B cell house. Once they arrived at cell 131, the officers attempted to loosen the restraints as Winter thrusted his abdomen forward. When they released Winter's legs from the restraints, he began thrashing and kicking at the officers with shackled legs. The officers first attempted physical restraint and using joint and pressure manipulation techniques to obtain compliance. When the techniques were ineffective, the officers used targeted strikes to Winter's large muscle mass areas. The officers then carried Winter to the floor for a medical assessment and strip search. Winter spat and kicked at the officers and attempted to bite them. Clinic staff were still unable to treat Winter's cut, which had opened back up during the altercation and was bleeding profusely. Officers then placed Winter back in the restraint chair, as he continued to kick at them. The officers stopped using force once Winter was back in the chair and had ceased his aggression.

The Court starts with the first prong.  As there is no video recording of the cell incident, the conflicting accounts may have created a genuine issue of material fact. But the Court finds that Winter has not shown a genuine issue of fact for this claim. First, as noted above, Winter failed to properly controvert Defendants' version of the facts or support his own. Second, Winter's verified

complaint and affidavit are riddled with demonstrably false statements as detailed above. Third, his allegations for this claim are belied by the record. Winter admits that he had taken an illegal substance that caused him to be confused and paranoid. He also alleges that his face hit the floor and that Defendants stomped on his head breaking several teeth in half and causing him to bite through his tongue. But the medical records do not substantiate Winter's account that he suffered these injuries or any other injuries stemming from the cell incident. Thus, Winter's self-serving statements do not create a genuine issue for this claim even though there is no video evidence of this portion of the encounter because they are otherwise blatantly and repeatedly contradicted by the record.

On the properly supported record, the Court finds that Winter fails to show that a reasonable jury could find an Eighth Amendment violation. Even assuming he could show that the targeted strikes were more than a de minimis use of force, Winter stills fails to come forward with evidence from which a jury could find the subjective component. Winter needed to receive medical attention and be strip searched before he could be transported. The officers used escalating force, and Winter's continued resistance justified the targeted strikes to his large muscle mass areas. Even some stray strikes would not have risen to maliciousness given the circumstances. *See Stormer v. Koon*, 2010 WL 1257592, at *6-7 (S.D. Ohio 2010) (finding the defendants' use of fist strikes causing several facial fractures were not malicious even though the plaintiff was handcuffed and lying down in a cell because the punches were inflicted in a good faith effort to make the plaintiff stop kicking them and spitting blood at them). Therefore, the Court finds that no reasonable jury could find that the use of force was excessive and, therefore, Winter fails to overcome the first prong.

Alternatively, Winter fails to overcome the second prong. He does not direct the Court to case law demonstrating that it was clearly established that the officers could not use pressure manipulation techniques and then targeted strikes to attempt to gain compliance for a strip search and medical treatment on the facts of this case. *See Piedra v. True*, 169 F. Supp. 2d 1239, 1243 (D. Kan. 2001), *aff'd,* 52 F. App'x 439 (10th Cir. 2002) (granting qualified immunity on claim that prison officials beat a handcuffed prisoner where officials submitted evidence that plaintiff had been swinging, kicking, and spitting at them); *see also Gulley*, 2020 WL 1916787, at *6 (D. Conn. 2020) (finding not clearly established that "knee strikes when administered after a prisoner refuses to comply with verbal orders and after other, lesser techniques have been attempted—rise to the level of excessive force under the Eighth Amendment"). Although he cites a few cases in his response, none address the context of this claim. Therefore, Winter fails to overcome qualified immunity and Defendants are entitled to summary judgment.

### v.        Use of handcuffs

Fifth, Winter alleges that the handcuffs cut into his wrists because Officer Dunn clamped the handcuffs on his wrists as tightly as possible after Winter was placed in a transport van. He further alleges that when he cried out in pain and said he was sorry, Officer Dunn remarked that he should have thought of that beforehand. Winter continues that he believed someone was behind him heating up the metal handcuffs with a torch due to the extreme burning sensation in his hands. He concedes he is not "100% certain" about this last part. Doc. 53-1 at 12. He alleges that he continues to suffer wrist pain.

Officer Dunn claims that he applied the handcuffs to allow two fingers-width between the cuffs and wrists pursuant to policy. Doc. 41-7 at 2-3. For that reason, he ignored Winter's complaints. *Id.* at 3. Defendants deny that Winter suffered any wrist injuries. And his medical

records do not indicate that he had slits, burn marks, or other new injuries to his wrists. His pain was attributed to carpel tunnel syndrome. But the Court notes that the photographic evidence shows scabbing on Winter's wrists, which an investigator attributed to handcuffs.

Again, starting with the first prong and construing the record most favorably to Winter, the Court finds that Officer Dunn's tightening of the handcuffs caused the scabbing on Winter's wrists. But the tightening does not satisfy the objective component of excessive force. *See Folts v. Grady Cty. Bd. of Cty. Commissioners*, 2017 WL 11557929, at \*5 (W.D. Okla. 2017), *report and recommendation adopted,* 2017 WL 11558076 (W.D. Okla. 2017) (finding a failure to loosen handcuffs during a five-hour van ride resulting in pain, psychological trauma, skin abrasions, erythema in the left wrist, and decreased grip strength failed to satisfy the objective component).

Even if there is a genuine dispute on the objective component, Winter also fails to come forward with evidence from which a reasonable jury could find that he satisfies the subjective prong. Winter's conclusory complaint of ongoing pain is not sufficient to establish serious injuries. Given Winter's earlier violence and continued resistance afterward, every reasonable jury would find that Defendants were justified in ensuring that Winter was well-secured. *Stevenson*, 733 F. App'x at 945 (finding no Eighth Amendment violation when handcuffs left no gap between the cuffs and wrists because the plaintiff was resisting). In addition, even though Officer Dunn's alleged remark upon hearing Winter's complaint suggests vexation, it does not establish maliciousness. *See Hannula v. City of Lakewood*, 907 F.2d 129, 132 (10th Cir. 1990) (finding allegation that an officer was angry when handcuffing the plaintiff was probative of malice, "but certainly did not establish it"). Winter's apparent dangerousness justified leaving the handcuffs alone, even after he complained. Accordingly, the Court finds that Winter has not established a genuine dispute of material fact regarding the handcuffing from which a reasonable jury could find

17

an Eighth Amendment violation. *See Folts*, 2017 WL 11557929, at *6 (holding that the need for safety during a van ride was a legitimate reason for denying the plaintiff's request to loosen his hand restraints, precluding excessive force).

Alternatively, Winter fails to demonstrate the second prong of qualified immunity. He does not identify case law showing that the alleged constitutional violation was clearly established. *See Stevenson*, 733 F. App'x at 946 (holding that it was not clearly established that a refusal to loosen handcuffs standing alone constitutes an Eighth Amendment violation). Although he cites a few cases in his response, none address the context of this claim. Therefore, Winter fails to overcome both prongs of the qualified-immunity analysis.

### b.    Supervisors' Threats, Verbal Abuse, and Failure to Protect

Last, Winter alleges that Mansfield and Leon provoked the excessive force by threatening him about a year before, verbally abused him during the altercations, and failed to protect him from the excessive force. Defendants deny making any threats. For the above reasons, the Court finds that Winter has not created a genuine dispute that the threats occurred.

Regardless, the Court finds that no reasonable jury could find that any threats by the supervisors caused the use of force against Winter on October 26, 2018, and not his stabbing of three people and continued resistance afterwards. The alleged threats (*e.g.*, "I'm going to make your life hell") and verbal abuse (*e.g.*, "shut up") do not rise to a constitutional violation because they did not "create terror of instant and unexpected death." *Alvarez v. Gonzales*, 155 F. App'x 393, 396 (10th Cir. 2005) (internal quotation omitted) (holding that an officer's comment that he would "burn this guy" did not suggest a show of deadly force and therefore did not rise to an Eighth Amendment violation); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (idle threats of hanging insufficient). Finally, Mansfield and Leon cannot be liable for failure to protect from

an Eighth Amendment violation when one did not occur. *See Dale v. Harris*, 2014 WL 1414313, at *4 n.3 (D. Kan. 2014) ("Because there is no Eighth Amendment violation and no excessive force, plaintiff's failure to intervene claim fails as a matter of law and the court does not analyze it.").[7, 8]

## IV.   CONCLUSION

For these reasons, the Court finds that Defendants are entitled to Eleventh Immunity from Winter's official capacity claims. The Court also finds that Defendants are entitled to summary judgment on Winter's individual capacity claims because Defendants have demonstrated that there is no genuine issue of material fact, and Winter fails to overcome qualified immunity.[9, 10]

THE COURT THEREFORE ORDERS that Defendants' motion to dismiss, or in the alternative for summary judgment (Doc. 40) is GRANTED. The Court DISMISSES Winter's official capacity § 1983 claims WITHOUT PREJUDICE. It GRANTS summary judgment in

---

[7]   There are no well-supported facts that Mansfield was even present during the entire series of events. And Winter has not created a genuine issue on whether an "affirmative link" exists between the uses of force and Mansfield's exercise or control or direction or his failure to supervise. *Serna v. Colo. Dep't of Corr.*, 108 F. App'x 570, 575 (10th Cir. 2004).

[8]   To the extent Winter alleges an Eighth Amendment violation based on his less than four hours in the restraint chair, the Court finds that Defendants are entitled to qualified immunity. Winter's resistance before being placed in the chair and his resistance to being taken out justified its use for transport, after which he was removed from it. *See Marshall v. Wiebe*, 2018 WL 1806760, at *6-7 (D. Kan. 2018) (finding use of handcuffs, spit mask, and restraint chair was intended to maintain control overly passively resistant inmate); *Hinds v. Langston*, 2008 WL 276293, *2 (E.D. Ark. 2008) (finding no constitutional violation where a pretrial detainee was confined in a restraint chair for two hours after he verbally threatened a jailer).

[9]   Winter has also sued "Defendants, Names Unknown," who he alleges were officers that were either present during or participated in the above uses of force. Doc. 1 at 3. As discussed above, Defendants have since identified these individuals, and the Court orders their inclusion in the suit. With the exception of Officer Hamilton regarding the take down, *see supra* footnote 5, they too are entitled to summary judgment. Therefore, the Court dismisses the § 1983 claims against them with prejudice. *See Roper*, 81 F.3d at 127 (holding that when the unknown defendants would also be entitled to summary judgment, the appropriate disposition is to dismiss the unknown defendants with prejudice); *Medina v. Danaher*, 445 F. Supp. 3d 1367, 1373 n.8 (D. Colo. 2020) (same).

[10]  The Court also dismisses Winter's unspecified state law claims without prejudice. *See Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1231 (10th Cir. 2020) (noting the regular practice of dismissing without prejudice state-law claims, for which the district court has only supplemental jurisdiction, when the federal-law claims, to which they are supplemental, are dismissed early in the litigation). The Court declines to exercise supplemental jurisdiction over them.

Defendants' favor on Winter's individual capacity § 1983 claims. The Court DISMISSES WITH PREJUDICE the claims against the unknown defendants. The Court DISMISSES WITHOUT PREJUDICE a claim against Officer Hamilton based on the take down. The Court DISMISSES WITHOUT PREJUDICE Winter's remaining state law claims because the Court declines to exercise supplemental jurisdiction.

THE COURT FURTHER ORDERS that Winter's motion for leave to file new evidence (Doc. 72) is GRANTED.

THE COURT FURTHER ORDERS that interested party the Kansas Department of Corrections's motion to withdraw (Doc. 73) is GRANTED.

IT IS SO ORDERED.

Dated: August 27, 2021                    _/s/ Holly L. Teeter_____
                                          HOLLY L. TEETER
                                          UNITED STATES DISTRICT JUDGE

# United States District Court

**------------------------- DISTRICT OF KANSAS----------------------------**

**DOUGLAS WINTER,**

       **Plaintiff,**

       **v.**

**PATRICK MANSFIELD, MELISSA LEON, STEPHEN CHILES, BRETT CORBY, AUSTIN DUNN, JORDAN GLADFELTER, AND UNKNOWN DEFENDANTS,**

       **Defendants.**

**Case No. 5:19-CV-03236-HLT-TJJ**

## JUDGMENT IN A CIVIL CASE

☐    Jury Verdict.  This action came before the Court for a jury trial.  The issues have been tried and the jury has rendered its verdict.

☒    Decision by the Court.  This action came before the Court.  The issues have been considered and a decision has been rendered.

      Pursuant to the Order (Doc.76), the Court enters judgment in favor of Defendants Patrick Mansfield, Melissa Leon, Stephen Chiles, Brett Corby, Austin Dunn, Jordan Gladfelter and Unknown Defendants against Plaintiff Douglas Winter. This case is closed.

IT IS SO ORDERED.

                                TIMOTHY O'BRIEN
                                CLERK OF THE COURT

<u>Dated: August 27, 2021</u>         <u>/s/  M. Deaton            </u>
                                By Deputy Clerk

LII  > Federal Rules of Appellate Procedure  > **Rule 28. Briefs**

# Rule 28. Briefs

(a) Appellant's Brief. The appellant's brief must contain, under appropriate headings and in the order indicated:

(1) a disclosure statement if required by Rule 26.1;

(2) a table of contents, with page references;

(3) a table of authorities—cases (alphabetically arranged), statutes, and other authorities—with references to the pages of the brief where they are cited;

(4) a jurisdictional statement, including:

(A) the basis for the district court's or agency's subject-matter jurisdiction, with citations to applicable statutory provisions and stating relevant facts establishing jurisdiction;

(B) the basis for the court of appeals' jurisdiction, with citations to applicable statutory provisions and stating relevant facts establishing jurisdiction;

(C) the filing dates establishing the timeliness of the appeal or petition for review; and

(D) an assertion that the appeal is from a final order or judgment that disposes of all parties' claims, or information establishing the court of appeals' jurisdiction on some other basis;

(5) a statement of the issues presented for review;

(6) a concise statement of the case setting out the facts relevant to the issues submitted for review, describing the relevant procedural history, and identifying the rulings presented for review, with appropriate references to the record (see Rule 28(e));

(7) a summary of the argument, which must contain a succinct, clear, and accurate statement of the arguments made in the body of the brief, and which must not merely repeat the argument headings;

Appellate Case: 21-3171    Document: 010110653291    Date Filed: 03/07/2022    Page: 74

(B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);

(9) a short conclusion stating the precise relief sought; and

(10) the certificate of compliance, if required by Rule 32(g)(1).

(b) APPELLEE'S BRIEF. The appellee's brief must conform to the requirements of Rule 28(a)(1)–(8) and (10), except that none of the following need appear unless the appellee is dissatisfied with the appellant's statement:

(1) the jurisdictional statement;

(2) the statement of the issues;

(3) the statement of the case; and

(4) the statement of the standard of review.

(c) REPLY BRIEF. The appellant may file a brief in reply to the appellee's brief. Unless the court permits, no further briefs may be filed. A reply brief must contain a table of contents, with page references, and a table of authorities—cases (alphabetically arranged), statutes, and other authorities—with references to the pages of the reply brief where they are cited.

(d) REFERENCES TO PARTIES. In briefs and at oral argument, counsel should minimize use of the terms "appellant" and "appellee." To make briefs clear, counsel should use the parties' actual names or the designations used in the lower court or agency proceeding, or such descriptive terms as "the employee," "the injured person," "the taxpayer," "the ship," "the stevedore."

(e) REFERENCES TO THE RECORD. References to the parts of the record contained in the appendix filed with the appellant's brief must be to the pages of the appendix. If the appendix is prepared after the briefs are filed, a party referring to the record must follow one of the methods detailed in Rule 30(c). If the original record is used under Rule 30(f) and is not consecutively paginated, or if the brief refers to an unreproduced part of the record, any reference must be to the page of the original document. For example:

• Answer p. 7;

• Motion for Judgment p. 2;

• Transcript p. 231.

Appellate Case: 21-3171    Document: 010110653291    Date Filed: 03/07/2022    Page: 75

(f) REPRODUCTION OF STATUTES, RULES, REGULATIONS, ETC. If the court's determination of the issues presented requires the study of statutes, rules, regulations, etc., the relevant parts must be set out in the brief or in an addendum at the end, or may be supplied to the court in pamphlet form.

(g) [RESERVED]

(h) [Reserved]

(i) Briefs in a Case Involving Multiple Appellants or Appellees. In a case involving more than one appellant or appellee, including consolidated cases, any number of appellants or appellees may join in a brief, and any party may adopt by reference a part of another's brief. Parties may also join in reply briefs.

(j) CITATION OF SUPPLEMENTAL AUTHORITIES. If pertinent and significant authorities come to a party's attention after the party's brief has been filed—or after oral argument but before decision—a party may promptly advise the circuit clerk by letter, with a copy to all other parties, setting forth the citations. The letter must state the reasons for the supplemental citations, referring either to the page of the brief or to a point argued orally. The body of the letter must not exceed 350 words. Any response must be made promptly and must be similarly limited.

## NOTES

(As amended Apr. 30, 1979, eff. Aug. 1, 1979; Mar. 10, 1986, eff. July 1, 1986; Apr. 25, 1989, eff. Dec. 1, 1989; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 29, 1994, eff. Dec. 1, 1994; Apr. 24, 1998, eff. Dec. 1, 1998; Apr. 29, 2002, eff. Dec. 1, 2002; Apr. 25, 2005, eff. Dec. 1, 2005; Apr. 16, 2013, eff. Dec. 1, 2013; Apr. 28, 2016, eff. Dec 1, 2016; Apr. 25, 2019, eff. Dec. 1, 2019.)

### NOTES OF ADVISORY COMMITTEE ON RULES—1967

This rule is based upon Supreme Court Rule 40. For variations in present circuit rules on briefs see 2d Cir. Rule 17, 3d Cir. Rule 24, 5th Cir. Rule 24, and 7th Cir. Rule 17. All circuits now limit the number of pages of briefs, a majority limiting the brief to 50 pages of standard typographic printing. Fifty pages of standard typographic printing is the approximate equivalent of 70 pages of typewritten text, given the page sizes required by Rule 32 and the requirement set out there that text produced by a method other than standard typographic must be double spaced.

### NOTES OF ADVISORY COMMITTEE ON RULES—1979 AMENDMENT

Appellate Case: 21-3171     Document: 010110653291     Date Filed: 03/07/2022     Page: 76

LII  > Federal Rules of Appellate Procedure
 > **Rule 32. Form of Briefs, Appendices, and Other Papers**

# Rule 32. Form of Briefs, Appendices, and Other Papers

(a) FORM OF A BRIEF.

(1) *Reproduction.*

(A) A brief may be reproduced by any process that yields a clear black image on light paper. The paper must be opaque and unglazed. Only one side of the paper may be used.

(B) Text must be reproduced with a clarity that equals or exceeds the output of a laser printer.

(C) Photographs, illustrations, and tables may be reproduced by any method that results in a good copy of the original; a glossy finish is acceptable if the original is glossy.

(2) *Cover.* Except for filings by unrepresented parties, the cover of the appellant's brief must be blue; the appellee's, red; an intervenor's or amicus curiae's, green; any reply brief, gray; and any supplemental brief, tan. The front cover of a brief must contain:

(A) the number of the case centered at the top;

(B) the name of the court;

(C) the title of the case (see Rule 12(a));

(D) the nature of the proceeding (e.g., Appeal, Petition for Review) and the name of the court, agency, or board below;

(E) the title of the brief, identifying the party or parties for whom the brief is filed; and

(F) the name, office address, and telephone number of counsel representing the party for whom the brief is filed.

3/7/22, 10:21 AM     Rule 32. Form of Briefs, Appendices, and Other Papers | Federal Rules of Appellate Procedure | US Law | LII / Legal Information I…

Appellate Case: 21-3171    Document: 010110653291    Date Filed: 03/07/2022    Page: 77

paper. The text must be double-spaced, but quotations more than two lines long may be indented and single-spaced. Headings and footnotes may be single-spaced. Margins must be at least one inch on all four sides. Page numbers may be placed in the margins, but no text may appear there.

(5) *Typeface.* Either a proportionally spaced or a monospaced face may be used.

(A) A proportionally spaced face must include serifs, but sans-serif type may be used in headings and captions. A proportionally spaced face must be 14-point or larger.

(B) A monospaced face may not contain more than 10 1/2 characters per inch.

(6) *Type Styles.* A brief must be set in a plain, roman style, although italics or boldface may be used for emphasis. Case names must be italicized or underlined.

(7) *Length.*

(A) *Page Limitation.* A principal brief may not exceed 30 pages, or a reply brief 15 pages, unless it complies with Rule 32(a)(7)(B).

(B) *Type-Volume Limitation.*

(i) A principal brief is acceptable if it:

- contains no more than 13,000 words; or

- uses a monospaced face and contains no more than 1,300 lines of text.

(ii) A reply brief is acceptable if it contains no more than half of the type volume specified in Rule 32(a)(7)(B)(i).

(b) FORM OF AN APPENDIX. An appendix must comply with Rule 32(a)(1), (2), (3), and (4), with the following exceptions:

(1) The cover of a separately bound appendix must be white.

(2) An appendix may include a legible photocopy of any document found in the record or of a printed judicial or agency decision.

(3) When necessary to facilitate inclusion of odd-sized documents such as technical drawings, an appendix may be a size other than 8 1/2 by 11 inches, and need not lie reasonably flat when opened.

(c) FORM OF OTHER PAPERS.

(1) *Motion.* The form of a motion is governed by Rule 27(d).

Appellate Case: 21-3171    Document: 010110653291    Date Filed: 03/07/2022    Page: 78

    (A) A cover is not necessary if the caption and signature page of the paper together contain the information required by Rule 32(a)(2). If a cover is used, it must be white.

    (B) Rule 32(a)(7) does not apply.

(d) SIGNATURE. Every brief, motion, or other paper filed with the court must be signed by the party filing the paper or, if the party is represented, by one of the party's attorneys.

(e) LOCAL VARIATION. Every court of appeals must accept documents that comply with the form requirements of this rule and the length limits set by these rules. By local rule or order in a particular case, a court of appeals may accept documents that do not meet all the form requirements of this rule or the length limits set by these rules.

(f) ITEMS EXCLUDED FROM LENGTH. In computing any length limit, headings, footnotes, and quotations count toward the limit but the following items do not:

· cover page;

· disclosure statement;

· table of contents;

· table of citations;

· statement regarding oral argument;

· addendum containing statutes, rules, or regulations;

· certificate of counsel;

· signature block;

· proof of service; and

· any item specifically excluded by these rules or by local rule.

(g) Certificate of Compliance.

    (1) BRIEFS AND PAPERS THAT REQUIRE A CERTIFICATE. A brief submitted under Rules 28.1(e)(2), 29(b)(4), or 32(a)(7)(B)—and a paper submitted under Rules 5(c)(1), 21(d)(1), 27(d)(2)(A), 27(d)(2)(C), 35(b)(2)(A), or 40(b)(1)—must include a certificate by the attorney, or an unrepresented party, that the document complies with the type-volume limitation. The person preparing the certificate may rely on

Appellate Case: 21-3171    Document: 010110653291    Date Filed: 03/07/2022    Page: 79

(2) ACCEPTABLE FORM. Form 6 in the Appendix of Forms meets the requirements for a certificate of compliance.

## NOTES

(As amended Apr. 24, 1998, eff. Dec. 1, 1998; Apr. 29, 2002, eff. Dec. 1, 2002; Apr. 25, 2005, eff. Dec. 1, 2005; Apr. 28, 2016, eff. Dec 1, 2016; Apr. 25, 2019, eff. Dec. 1, 2019.)

### NOTES OF ADVISORY COMMITTEE ON RULES—1967

Only two methods of printing are now generally recognized by the circuits—standard typographic printing and the offset duplicating process (multilith). A third, mimeographing, is permitted in the Fifth Circuit. The District of Columbia, Ninth, and Tenth Circuits permit records to be reproduced by copying processes. The Committee feels that recent and impending advances in the arts of duplicating and copying warrant experimentation with less costly forms of reproduction than those now generally authorized. The proposed rule permits, in effect, the use of any process other than the carbon copy process which produces a clean, readable page. What constitutes such is left in first instance to the parties and ultimately to the court to determine. The final sentence of the first paragraph of subdivision (a) is added to allow the use of multilith, mimeograph, or other forms of copies of the reporter's original transcript whenever such are available.

### COMMITTEE NOTES ON RULES—1998 AMENDMENT

In addition to amending Rule 32 to conform to uniform drafting standards, several substantive amendments are made. The Advisory Committee had been working on substantive amendments to Rule 32 for some time prior to completion of this larger project.

*Subdivison (a).* Form of a Brief.

*Paragraph (a)(1).* Reproduction.

The rule permits the use of "light" paper, not just "white" paper. Cream and buff colored paper, including recycled paper, are acceptable. The rule permits printing on only one side of the paper. Although some argue that paper could be saved by allowing double-sided printing, others argue that in order to preserve legibility a heavier weight paper would be needed, resulting in little, if any, paper saving. In addition, the blank sides of a brief are commonly used by judges and their clerks for making notes about the case.

Appellate Case: 21-3171    Document: 010110653291    Date Filed: 03/07/2022    Page: 80

LII  > Federal Rules of Civil Procedure  **> Rule 56. Summary Judgment**

# Rule 56. Summary Judgment

(a) MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT. A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(b) TIME TO FILE A MOTION. Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

(c) PROCEDURES.

   (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

     (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

     (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

   (2) *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

   (3) *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

(d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

(e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or

(4) issue any other appropriate order.

(f) Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may:

(1) grant summary judgment for a nonmovant;

(2) grant the motion on grounds not raised by a party;or

(3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

(g) Failing to Grant All the Requested Relief. If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case.

(h) Affidavit or Declaration Submitted in Bad Faith. If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court — after notice and a reasonable time to respond — may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

## 10th Cir. R. 28

**28.1  References to appendix or record.**

    **(A)  Record references.** For each issue raised on appeal, all briefs must cite the precise references in the record where the issue was raised and ruled on. Counsel are encouraged to include a footnote in the briefs at the point of the first record citation to confirm the citation convention.

        **(1)  Appendix.** References to the appendix should be by volume and page number (e.g., Aplt. App. Vol. 2 at 27, or Aplee. Supp. App. Vol. 2 at 14).

        **(2)  Record.** In cases without an appendix, references to the record should be to the record volume and page number (e.g., ROA, Vol. II, at 6). References to the transcript should be by volume and page number.

    **(B)  Particular record references.** Briefs must cite the precise references in the record where a required objection was made and ruled on, if the appeal is based on:

        **(1)**  a failure to admit or exclude evidence;

        **(2)**  the giving of or refusal to give a particular jury instruction; or

        **(3)**  any other act or ruling for which a party must record an objection to preserve the right to appeal.

**28.2  Additional requirements.**

    **(A)  Appellant's brief.** In addition to all other requirements of the Federal Rules of Appellate Procedure and these rules, the appellant's brief must include as an attachment the following (even though they are also included in the appendix or record):

        **(1)**  copies of all pertinent written findings, conclusions, opinions, or orders of a district judge, bankruptcy judge, or magistrate judge (if the district court adopts a magistrate's report and recommendation, that report must also be included);

        **(2)**  if any judicial pronouncement listed in (1) is oral, a copy of the transcript pages;

**(3)**   in social security cases, copies of the decisions of the administrative law judge and the appeals council;

**(4)**   in immigration cases, a copy of the transcript from the Immigration Judge's oral ruling, plus copies of the written rulings of the Immigration Judge and the Board of Immigration Appeals; and

**(5)**   the judgment.

**(B)**   **Appellee's brief.** If the appellant's brief fails to attach all the rulings required by (A), the appellee's brief must attach them.

**(C)**   **All principal briefs.**

**(1)**   **Name of court, judge, and originating case number.** The front cover of each brief must contain the name of the court, the judge whose judgment is being appealed, and the originating case number.

**(2)**   **Oral argument statement.** The front cover of each party's first brief must state whether oral argument is requested. If argument is requested, a statement of the reasons why argument is necessary must follow the brief's conclusion.

**(3)**   **Statement of related cases.** At the end of the Table of Authorities, the first brief filed by each party must list all prior or related appeals, with appropriate citations, or a statement that there are no prior or related appeals.

**(4)**   **Glossary.** All briefs containing acronyms or abbreviations not in common use (other than names of parties) must include a Glossary on a page immediately following the Table of Authorities.

**(5)**   **Brief Attachments and the Table of Contents.** All attachments to briefs, including those required by Rule 28.2(A), shall be identified and included in the Table of Contents.

## 28.3   Disfavored practices.

(**A**)   **Motions to exceed word counts are disfavored**. Motions to exceed the word count will be denied unless extraordinary and compelling circumstances can be shown. A motion filed within 14 days of the brief's due date must show why earlier filing was not possible.

90

**(B)    Incorporating by reference disapproved.** Incorporating by reference portions of lower court or agency briefs or pleadings is disapproved and does not satisfy the requirements of Federal Rules of Appellate Procedure 28(a) and (b).

**(C)    Use of passim discouraged.** Use of passim as a citation form is discouraged. Parties are encouraged to include page references for all authorities and sources.

## II.     LOCAL RULE 56.1. MOTIONS FOR SUMMARY JUDGMENT

**(a) Supporting Memorandum.** The memorandum or brief in support of a motion for summary judgment must begin with a section that contains a concise statement of material facts as to which the movant contends no genuine issue exists. The facts must be numbered and must refer with particularity to those portions of the record upon which movant relies. All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.

**(b) Opposing Memorandum.**

(1) A memorandum in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed.
(2) If the party opposing summary judgment relies on any facts not contained in movant's memorandum, that party must set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above. All material facts set forth in this statement of the non-moving party will be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply of the moving party.

**(c) Reply Memorandum.** In a reply brief, the moving party must respond to the non-moving party's statement of additional material facts in the manner prescribed in subsection (b)(1).

**(d) Presentation of Factual Material.** All facts on which a motion or opposition is based must be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories, and responses to requests for admissions. Affidavits or declarations must be made on personal knowledge

and by a person competent to testify to the facts stated that are admissible in evidence. Where facts referred to in an affidavit or declaration are contained in another document, such as a deposition, interrogatory answer, or admission, a copy of the relevant excerpt from the document must be attached.

**(e) Duty to Fairly Meet the Substance of the Matter Asserted.** If the responding party cannot truthfully admit or deny the factual matter asserted, the response must specifically set forth in detail the reasons why. All responses must fairly meet the substance of the matter asserted.

**(f) Notice to Pro Se Litigant Who Opposes a Summary Judgment Motion.** Any represented party moving for summary judgment against a party proceeding pro se must serve and file as a separate document, together with the papers in support of the motion, the following "Notice To Pro Se Litigant Who Opposes a Motion For Summary Judgment" with the full texts of Fed. R. Civ. P. 56 and D. Kan. Rule 56.1 attached. Where the pro se party is not the plaintiff, the movant must amend the form notice as necessary to reflect that fact.

**"Notice To Pro Se Litigant Who Opposes a Motion For Summary Judgment"**

The defendant in this case has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This means that the defendant has asked the court to decide this case without a trial, based on written materials, including affidavits, submitted in support of the motion. The claims you assert in your complaint may be dismissed without a trial if you do not respond to this motion on time by filing sworn affidavits and/or other documents as required by Rule 56(c) of the Federal Rules of Civil Procedure and by D. Kan. Rule. 56.1. The full text of these two rules is attached to this notice. In short, Fed. R. Civ. P. 56 provides that you may not oppose summary judgment simply by relying upon the allegations in your complaint. Rather, you must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising specific facts that support your claim. If you have proof of your claim, now is the time to submit it. Any witness statements must be in the form of affidavits. An affidavit is a sworn statement of fact based on personal knowledge stating facts that would be admissible in evidence at trial. You may submit your own affidavit and/or the affidavits of others. You may submit affidavits that were prepared specifically in response to defendant's motion for summary judgment. If you do not respond to the motion for summary judgment on time with affidavits and/or documents contradicting the material facts asserted by the defendant, the court may accept defendant's facts as true, in which event your case may be dismissed and judgment entered in defendant's favor without a trial.